# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re § | Chapter 11 | |
| § | | |
| PROMISE HEALTHCARE GROUP, LLC § | Case No. 18-12491 (CSS) | |
| *et al.*[1] § | | |
| Debtors. § | (Jointly Administered) | |

| | | |
|---|---|---|
| SUCCESS HEALTHCARE 1, LLC and § | | |
| PROMISE HEALTHCARE, INC. § | | |
| Plaintiff § | | |
| § | | |
| v. § | ADV. NO. _____ | |
| § | | |
| SURGICAL PROGRAM DEVELOPMENT, § | | |
| LLC and BRENDAN BAKIR, individually § | | |
| § | | |
| Defendant § | | |

## PLAINTIFFS' COMPLAINT AND INCORPORATED OBJECTION TO PROOFS OF CLAIM FILED BY SURGICAL PROGRAM DEVELOPMENT, LLC

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: HLP HealthCare, Inc. (8381), PH-ELA, Inc. (9180), Promise Healthcare #2, Inc. (1913), Promise Healthcare Group, LLC (1895), Promise Healthcare Holdings, Inc. (2601), Bossier Land Acquisition Corp. (6644), HLP of Los Angeles, LLC (9102), HLP of Shreveport, Inc. (1708), HLP Properties at The Villages Holdings, LLC (0006), HLP Properties at the Villages, L.L.C. (1938), HLP Properties of Vidalia, LLC (4255), HLP Properties, Inc. (0068), Promise Healthcare of California, Inc. (9179), Promise Healthcare, Inc. (7953), Promise Hospital of Ascension, Inc. (9219), Promise Hospital of Baton Rouge, Inc. (8831), Promise Hospital of Dade, Inc. (7837), Promise Hospital of Dallas, Inc. (0240), Promise Hospital of East Los Angeles, L.P. (4671), Promise Hospital of Florida at The Villages, Inc. (2171), Promise Hospital of Louisiana, Inc. (4886), Promise Hospital of Lee, Inc. (8552), Promise Hospital of Overland Park, Inc. (5562), Promise Hospital of Phoenix, Inc. (1318), Promise Hospital of Salt Lake, Inc. (0659), Promise Hospital of Vicksburg, Inc. (2834), Promise Hospital of Wichita Falls, Inc. (4104), Promise Properties of Dade, Inc. (1592), Promise Properties of Lee, Inc. (9065), Promise Properties of Shreveport, LLC (9057), Promise Skilled Nursing Facility of Overland Park, Inc. (5752), Promise Skilled Nursing Facility of Wichita Falls, Inc. (1791), Quantum Health, Inc. (4298), Quantum Properties, L.P. (8203), Success Healthcare 1, LLC (6535), Success Healthcare, LLC (1604), Vidalia Real Estate Partners, LLC (4947), LH Acquisition, LLC (2328), Promise Behavioral Health Hospital of Shreveport, Inc. (1823), Promise Rejuvenation Centers, Inc. (7301), Promise Rejuvenation Center at the Villages, Inc. (7529), and PHG Technology Development and Services Company, Inc. (7766). The mailing address for the Debtors, solely for purposes of notices and communications, is 999 Yamato Road, 3rd FL, Boca Raton, FL 33431.

Success Healthcare 1, LLC ("**Success**") and Promise Healthcare, Inc. ("**Promise**") file this *Complaint and Incorporated Objection to Proofs of Claim Filed By Surgical Program Development, LLC*:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A), (B), (C), (E) and (O). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. PARTIES

2. Plaintiff Success is a debtor-in-possession in these jointly administered cases.

3. Plaintiff Promise is also a debtor-in-possession in these jointly administered cases. Promise is joined solely for the purposes of the Objection to Claims set forth below.

4. Defendant Surgical Program Development LLC ("**Defendant**" or "**SPD**") is a California limited liability company that may be served with process by serving Kevin Jorgensen, 1217 W. Whittier Blvd., Montebello, CA 90640. SPD has filed proofs of claim against Success and Promise in these cases, and has submitted to the jurisdiction of this Court.

5. Brendan Bakir ("**Bakir**") is the CEO and principal of SPD, and is the Chair of the Official Committee of Unsecured Creditors in these Chapter 11 cases. Bakir may be served with process at his business address, 18000 Studebaker Rd. #700, Cerritos, California 90703.

## III. RELEVANT BACKGROUND

6. On November 5, 2018, (the "**Petition Date**") Success, Promise and affiliated debtors filed their voluntary petitions for relief under chapter 11 of title 11 of the United States Code. Prior to the Petition Date, Success owned and operated the Silver Lake Medical Center in Los Angeles, California. This Court approved a sale of substantially all of Success' assets pursuant to the *Order (A) Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Liens,*

*Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases,(C) Authorizing Success Healthcare 1, LLC to Grant Liens, and (D) Granting Related Relief* (D.I. 740) entered on February 13, 2019; however, Success retained the claims, defenses and objections asserted herein.

7. Prior to the Petition Date, SPD and Bakir promoted themselves as industry leaders with expertise in management of and collection for surgical programs within hospitals such as Success. SPD and Bakir also represented that they are knowledgeable regarding building legally compliant and profitable surgical specialty programs. At all times material hereto, Bakir directed the activities of and controlled SPD.

8. On or about June 1, 2010, SPD and Success entered into a Collections and Management Services Agreement (the "**Agreement**"), a true and correct copy of which is attached as **Exhibit A**.

9. Pursuant to the Agreement, SPD agreed to provide timely and cost-effective collection services for certain surgical procedures billed by Success to "private insurance payers, Workers' funds or payers, and/or personal injury liens" ("**Payers**"). These procedures in large part were spine-related procedures and often involved the implant of expensive hardware. SPD also agreed to assist Success in initiating, building, and managing a substantial and sustainable orthopedic surgical program.

10. SPD and Success subsequently amended the scope of the Agreement on (the "**First Amendment**") to include additional collection and management services. The First Amendment did not amend any existing/relevant provisions to the Agreement. Specifically, the terms regarding payment and collection were unchanged.

11. Pursuant to the Agreement, SPD was to receive compensation based on amounts paid to and received by Success by Payers. SPD was required under the Agreement to pay hardware vendors for their costs.

12. In June 2013, the Agreement was amended for a second time (the "**Second Amendment**"). The Second Amendment dealt solely with compensation to SPD.

13. SPD, however, did not adhere to the terms set forth in the Agreement. Instead, SPD constantly and aggressively monitored Success's collection of payments for surgeries which were assigned to SPD for collection or for which SPD believed it was entitled to payment. In fact, Success later learned that SPD was paying one of Success's employees to share "real time" data with SPD regarding the details of Success's receipt of payments and Explanations of Benefits.

14. In past years, when Success received a check for payment from a Payer for which SPD was entitled compensation, SPD would unlawfully retrieve the check from Success. SPD represented to Success that it would retain the checks until it prepared a calculation at month's end of what was owed to SPD and then would return the accumulated checks to Success in exchange for payment to SPD. At first, SPD followed through on its promise and returned all of Success's checks.

15. Later, however, SPD converted the checks that it had retrieved from Success and refused to turn them over at the end of each month. When pressed for the payments, SPD falsely claimed that it did not need to pay Success its portion of the payments for 180 days from the date of payment to Success. SPD thereafter converted by collecting — but failing to turn over — Success's payments for the period December 2016 through early August 2017. These checks total more than $1.8 million, and the known checks[2] are listed on **Exhibit B** .

---

[2] As set forth below, Success is seeking an accounting to identify all checks.

16. The Agreement did not require Success to turn over checks to SPD. Section 3.6 of the Agreement, which has never been amended, clearly states that "[a]ll payments by Payers or others with respect to a Referred Case are to be made payable solely to 'Success Healthcare 1, LLC' or as Hospital may otherwise direct in writing and are to be delivered to Hospital directly, not to Company. All settlements and orders for payment of Claims must reflect that payment shall be made solely to 'Success Healthcare 1, LLC' or as Hospital may otherwise direct in writing and are to be delivered to Hospital directly." SPD had no contractual or other lawful right to take possession of the checks.

17. It was only through pressure and harassment that SPD succeeded in convincing Success to turn over checks to SPD rather than depositing them directly into Success's bank account. As a result of SPD's refusal to return to Success its checks, a balance owing to Success quickly grew to over $1.8 million.

18. SPD also stopped managing and paying hardware vendors. Due to SPD's refusal to carry out the terms of the Agreement, Success was forced to negotiate with and pay hardware vendors directly, further increasing Success's damages as a result of SPD's breach of contract.

19. SPD managed to continue to obtain checks from Success while Success attempted to obtain an agreement from SPD to turn over its funds. On or about July 19, 2017, after nearly a year of attempting to negotiate repayment of SPD's growing debt, Success sent a Notice to Cure the Agreement and again demanded payment. SPD did not cure and has continued to retain Success's funds paid to Success by Payers for healthcare services rendered by Success.

## FIRST CAUSE OF ACTION

**(Turnover)**

20. Success realleges and incorporates by reference paragraphs 1-19 above.

21. SPD is in possession of property of Success, and/or owes a debt to Success. Pursuant to 11 U.S.C. §542,(a) and/or (b) and Bankruptcy Rule 7001(1), Success demands that SPD turn over all funds which were withheld.

## SECOND CAUSE OF ACTION

### (Violation of Automatic Stay)

22. Success realleges and incorporates by reference paragraphs 1-19 above.

23. As of the Petition Date, 11 U.S.C. §362(a)(3) prohibited any party from taking any action "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." As noted above, SPD, at the direction and under the control of Bakir, has willfully and wrongfully retained the checks and/or proceeds thereof in violation of the automatic stay. Success has been damaged by the loss of these funds, and pursuant to 11 U.S.C. §362(k) seeks recovery of actual damages, attorneys' fees and costs from SPD and, based upon his direction and control of SPD and active involvement in the events described above and retention of the funds, Bakir individually.

24. Additionally, Success seeks recovery of punitive damages against SPD and Bakir for the willful violations of the automatic stay.

## THIRD CAUSE OF ACTION

### (Breach of Contract)

25. Success realleges and incorporates by reference paragraphs 1 through 19 above.

26. Success and SPD entered into the Agreement. The Agreement detailed the compensation to be paid to SPD for various collection and management services. During the relevant time period, SPD would receive 60% of the amount paid to Success but would be liable for the hardware in those surgical cases where hardware was used.

27. Success performed or was prevented by SPD from performing all of the requirements set forth in the Agreement that Success was required to perform.

28. SPD materially breached the Agreement when it, among other breaches, failed to pay hardware vendors and refused to turn over funds owed to Success pursuant to the Agreement. Collectively and individually, these actions have materially breached the Agreement as a whole and deprived Success of its contractual rights and the consideration it was entitled to receive under the Agreement.

29. As a result of SPD's breach of the Agreement, Success has been damaged in excess of this Court's jurisdictional limit.

## FOURTH CAUSE OF ACTION

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

30. Success hereby realleges and incorporates by reference paragraphs 1 through 19 above as if fully set forth herein.

31. Under California law,[3] in every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of the other party to receive the benefits of the contract. SPD has engaged in a deliberate course of conduct to breach, undermine and frustrate the Agreement. This conduct evidences SPD's bad faith and breach the covenant of good faith and fair dealing.

32. SPD, among other acts, engaged in undisclosed dealings with physicians that were contrary state and federal law and interfered with Success's relationship with its employees and physician contractors. These actions, among others, were detrimental to the purpose and spirit of the Agreement, which was to assist Success with its surgical department and grow revenue in

---

[3] SPD and Success Healthcare 1 are both incorporated under California law.

compliance with state and federal laws. Instead, SPD's malfeasance economically harmed Success and placed its compliance with state and federal laws in jeopardy.

33. On information and belief, SPD was fully aware that such actions could impact and were contrary to the terms of its contractual relationship with Success and the interests of Success.

34. Success has fulfilled, or was prepared to fulfill, all the requirements set forth in the Agreement.

35. Success has been damaged and is entitled to damages to be proven at trial.

**FIFTH CAUSE OF ACTION**

**(Conversion)**

36. Success hereby realleges and incorporates by reference paragraphs 1 through 19 above as if fully set forth herein.

37. In June 2010, Success and SPD entered into the Agreement, providing that SPD would, among other things, provide timely and cost-effective collection services for certain surgical procedures billed by Success to private insurance payers, Workers' funds or payers, and/or personal injury liens.

38. These payments and checks normally would be sent to Success for deposit and accounting. SPD represented to Success that it would turn over the checks after it prepared a calculation at month's end of what was owed to SPD. SPD then would return the accumulated checks to Success in exchange for payment to SPD. Success is the rightful owner of the checks entrusted to SPD's custody and care.

39. Success has made multiple demands for SPD to turn over the checks and proceeds received from Payers for health care services rendered to patients of Success.

40. However, SPD, at the direction and under the control of Bakir, intentionally and substantially interfered with SPD's property by refusing to turn over the checks that it had retrieved

from Success both prior to and following the Petition Date. When pressed for the payments, SPD claimed that it did not need to pay Success its portion of the payments for 180 days from the date of payment to Success. SPD thereafter collected over $1.8 million of Success's payments for the period December 2016 through early August 2017. SPD has completely failed and/or refused to account for Success's funds and has refused to return any of Success's funds.

41. Success in no manner consented to SPD's misappropriation of Success funds.

42. As a direct and proximate result of SPD's conversion of Success's monies, Success has been damaged in an amount to be determined at trial, and seeks recovery both from SPD and Bakir individually, for his individual actions in directing and controlling SPD's activities.

43. As a result of SPD's intentional misconduct, recklessness, malice, and/or fraud alleged herein, Success is entitled to an award of punitive damages pursuant to *California Civil Code* § 3294.

## SIXTH CAUSE OF ACTION

### (Accounting)

44. Success hereby realleges and incorporates by reference paragraphs 1 through 19 above as if fully set forth herein.

45. An agreement exists between Success and SPD wherein Success agreed to compensate SPD based upon a percentage of reimbursement received from private insurance payers, Workers' funds or payers, and/or personal injury liens. Success entrusted SPD with said payments, trusting SPD to calculate the appropriate percentage owed. This relationship allows for an appropriate claim for accounting to be made by Success.

46. The Agreement requires, among other things, a duty to account for all revenue derived from Payers, as well as all expenses related to hardware. Specifically, Section 1.3 of the Agreement states:

Company [SPD] will keep and maintain for seven (7) years from the date of termination of Agreement, detailed books, records, and other documentation, whether in written or electronic form, pertaining to its Collection Services, including notes, logs, and correspondence pertaining to beneficiaries, services rendered by the Hospital [Success], and/or Payers against whom payment is sought by Hospital. Such obligations survive termination of this Agreement. Company shall promptly permit Hospital to access its records relating to the Collection Services upon request.

47. Further, Section 1.5 of the Agreement states:

Company shall permit Hospital to audit, within a reasonable time of its request and during normal business hours, Company's reports submitted pursuant to the requirements of this Agreement. Company shall cooperate with any compliance program established by the Hospital during the term hereof, including without limitation, giving Hospital and its representatives access to all claim records, data information, and software required by Hospital or Hospital's authorized agent who performs such audit. Hospital may challenge any invoice submitted by Company within a reasonable time of receipt thereof.

48. These provisions of the Agreement never have been amended.

49. SPD continues to fail and/or refuse to provide any such accounting to Success.

50. As a result of the SPD's conduct, SPD has received money, a portion of which is due to Success.

51. The exact amount of money due from SPD to Success is unknown to Success and cannot be ascertained without an accounting of the aforementioned payments and expenses relating to health care services rendered at Success which are subject to the Agreement, but SPD has failed and refused, and continues to fail and refuse, to render such an accounting.

## IV. OBJECTION TO CLAIM NUMBERS 897 AND 898

52. SPD has filed Claim No. 898 against Success, and Claim No. 897 against Promise (the "**Claims**"). The Claims are identical, and seek recovery of $45,900,000.00 from each Debtor based upon allegations made in case no. BC-673656 styled "*Surgical Program Development, LLC v. Success Healthcare I, LLC et al,*" in the Superior Court of the State of California, County of Los Angeles." A filed proof of claim is "deemed allowed, unless a party in interest…objects." 11 U.S.C. §502(a). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See In re Allegheny Int'l, Inc,* 954 F.2d 167, 173 (3d Cir. 1992) (the initial burden is on the Claimant to "allege facts sufficient to support the claim") *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009). Further, "a creditor that fails to comply with Rule 3001(c) does not receive the benefit of this prima facie validity, and instead, in response to an objection must come forward with sufficient evidence of a claim's validity and amount." *In re Moreno*, 341 B.R. 813, 817 (Bankr. S.D. Fla. 2006)

53. **Objection No. 1: Lack of documentation and basis for amount claimed.** Other than stating that SPD seeks recovery of $45,900,000, the Claims do not provide any detail nor the basis for calculation of the amount sought. Accordingly, the claim is deficient pursuant to Rule 3001(f) of the Federal Rules of Bankruptcy Procedure and should not be allowed. *See In re Stoecker*, 5 F.3d 1022, 1028 (7th Cir. 1993) (claim that lacks sufficient documentation is not given prima facie validity). Moreover, as set forth below, the Agreement contained a provision allowing a termination for any reason on 90 days' notice. Given this right to terminate without cause, SPD has grossly exaggerated its alleged damages and purported destruction of business.

54. **Objection No. 2: Breach of Contract.** As set forth above, SPD has materially breached its contract with SPD and is not entitled to recovery from the Debtors.

55. **Objection No. 3: Setoff.** Success is entitled to setoff for the amounts awarded as damages for its claims against SPD.

56. **Objection No. 4: Turnover**. Section 502(d) of the Bankruptcy Code states, "the court shall disallow any claim of any entity from which property is recoverable under section … 542… of this title unless such entity has paid the amount, or turned over any such property." SPD is in possession of funds belonging to Success, as described above. Debtors hereby object to the Claims on the grounds that the Subject Claim shall be disallowed under 11 U.S.C. §502(d).

57. **Objection No. 5: The Claims are unliquidated.** The Claims are primarily based upon tort causes of action which are by their nature unliquidated.

58. **Objection No. 6: SPD's Claim is limited to at most, 90 days of alleged damages.** Pursuant to Section 4.4 of the Agreement, either party had the absolute right to terminate the agreement without cause on ninety (90) days' notice. Accordingly, regardless of the circumstances surrounding the termination of the Agreement, SPD's claim would be limited to purported damages attributable only to that ninety (90) day period.

59. **Objection No. 7: Disallowance of claim for punitive damages**. SPD asserts that it is entitled to punitive damages. Claims for punitive damages are not recoverable as part of the claims allowance process in a liquidating case such as this, where unsecured creditors will not be paid in full. *See, e.g., Novak v. Callahan (Matter of GAC Corp*.), 681 F.2d 1295, 1301 (11th Cir. 1982); *In re Motors Liquidation Co.,* Case No. 09-50026, 2012 WL 10864205 *11 (Bankr. S.D.N.Y. Aug. 6, 2012).

60. **Objection No. 8: Disallowance of the requested attorneys' fees.** SPD requests recovery of attorneys' fees. No fees were awarded prepetition. Moreover, SPD, as an unsecured creditor at most, is not entitled to recovery of postpetition fees. Accordingly, these should be disallowed.

61. **Relief Requested and Reservation.** Debtors request the court enter an disallowing the Claims. Trustee reserves all other objections, procedural or substantive, not set forth herein.

**WHEREFORE,** Plaintiffs request that the Court enter judgment in favor of Success on the affirmative claims asserted herein, along with attorneys' fees, pre- and post-judgment interest and costs, enter an order disallowing the Claims, and award Plaintiffs such other and further relief to which they may be entitled.

Dated: July 27, 2020  
Wilmington, Delaware

Respectfully submitted,  
DLA PIPER LLP (US)

/s/ *Stuart M. Brown*  
Stuart M. Brown (#4050)  
Matthew S. Sarna (#6578)  
1201 N. Market Street, Suite 2100  
Wilmington, DE 19801  
Telephone: (302) 468-5700  
Facsimile: (302) 394-2341  
Email: Stuart.Brown@dlapiper.com  
       Kaitlin.MacKenzie@dlapiper.com  
       Matthew.Sarna@dlapiper.com

-and-

WALLER LANSDEN DORTCH & DAVIS, LLP
John Tishler (admitted *pro hac vice*)
Katie G. Stenberg (admitted *pro hac vice*)
Blake D. Roth (admitted *pro hac vice*)
Tyler N. Layne (admitted *pro hac vice*)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: John.Tishler@wallerlaw.com
       Katie.Stenberg@wallerlaw.com
       Blake.Roth@wallerlaw.com
       Tyler.Layne@wallerlaw.com

and

Mark C. Taylor (admitted *pro hac vice*)
100 Congress Ave., Suite 1800
Austin, Texas 78701
Telephone: (512) 685-6400
Facsimile: (512) 685-6417
Email: Mark.Taylor@wallerlaw.com

*Attorneys for Plaintiffs*