**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) |
| PROMISE HEALTHCARE GROUP, LLC *et al.*, | ) Case No. 18-12491 (CTG) |
| | ) |
| Debtors. | ) |
| | ) |
| | ) |
| SUCCESS HEALTHCARE 1, LLC and | ) |
| PROMISE HEALTHCARE, INC., | ) Adv. No. 20-50769 (CTG) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| SURGICAL PROGRAM DEVELOPMENT, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## JOINT PRETRIAL ORDER

Robert Michaelson of Advisory Group, LLC, solely in his capacity as liquidating trustee of the Promise Healthcare Group Liquidating Trust ("Plaintiff"), in place of Success Healthcare 1, LLC ("Success") d/b/a Silver Lake Medical Center ("Silver Lake") and Promise Healthcare, Inc. ("Promise"), along with Surgical Program Development, LLC ("SPD"), submit this Joint Proposed Pretrial Order:

STATEMENT OF NATURE OF ACTION

1.  This is a combined adversary proceeding and objection to proofs of claim. Success seeks recovery of amounts allegedly owing from SPD under a "Collection and Management Services Agreement," as amended (the "Agreement"), between Success and SPD. SPD filed proofs of claim Nos. 898 (against Success) and 897 (against Promise), seeking recovery for damages allegedly arising as a result of the

-1-

termination of the Agreement by Success for cause and without sufficient notice, as specified in the Agreement. The Proofs of Claim each assert a claim of $45,900,000, although SPD does not seek a single recovery exceeding $15,300,000.

2. The issues presented are raised in Plaintiffs' Complaint and Incorporated Objection to Proofs of Claim [Dkt. 1], SPD's Answer [Dkt. 18] and SPD's state-court complaint attached to its proofs of claim.

3. Though originally identified as a defendant, the claims against SPD's principal, Brendan Bakir, were dismissed by agreement. Dkt. 72. Additionally, Plaintiff dismissed (1) its Second Cause of Action, for Violation of the Automatic Stay; (2) its Fourth Cause of Action, for Breach of the Implied Covenant of Good Faith and Fair Dealing, and (3) its Fifth Cause of Action, for Conversion.

## BASIS FOR JURISDICTION

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334. This is a matter arising in, arising under and/or related to the bankruptcy proceeding of Success and Promise, jointly administered with other Debtors under *In re Promise Healthcare Group, LLC et al.*, Case No. 18-12491 (CTG).

5. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A)(B)(C) and (O).

## STATEMENT REGARDING BANKRUPTCY RULE 7016

6. This is a core proceeding as referenced above and, as a result, the Court may enter a final judgment in this case. To the extent any matters are non-core, the parties consent to entry of a final judgment by this Court.

## AGREED ISSUES OF FACT

7. Success and SPD are parties to the Agreement, dated June 10, 2010.

8. The Agreement addresses a hospital spine and orthopedic surgery program (the "Surgical Program") at Silver Lake.

9. Under the Agreement, SPD provided billing, collection and management services for the Surgical Program.

10. There are two executed amendments to the Agreement: a First Amendment and a Second Amendment.

11. The Agreement was a valid and binding contract between SPD and Success.

12. Promise was aware of the Agreement.

13. In the parties' course of performance, Silver Lake assigned third-party payer checks relating to the Surgical Program to SPD, which would deposit them, and then remit the fee payable under the Agreement to Silver Lake.

14. David Armstrong, General Counsel of Promise, provided written notice to SPD of termination of the Agreement for cause by letter dated August 15, 2017 (the "Termination Letter").

15. SPD's address in 2017 was 18000 Studebaker Road, Suite 330, Cerritos, CA 90703.

16. Silver Lake began cancelling spine surgeries in connection with the Surgical Program in early August 2017.

17. In 2017, Silver Lake began to deposit third-party payer checks relating to the Surgical Program without remitting any portion of the checks to SPD.

CONTESTED ISSUES OF FACT

18. Whether the parties amended the Agreement through course of performance so that, between January 1, 2014 and August 2015, Silver Lake was responsible for the cost of all hardware in spine surgeries in connection with the Surgical Program.

19. Who authorized hardware for surgeries during that 20-month period?

20. Whether Success had cause to terminate the Agreement as set forth in the Termination Letter.

21. Whether Success gave sufficient notice to SPD under the Agreement of its intention to terminate it.

22. Whether SPD could move its business to a new location

23. Whether SPD communicated the special circumstances to Success at the time of forming the Agreement for the need for a 90-day notice period for termination of the Agreement without cause.

24. What amount, if any, is owed by SPD to Success pursuant to the Agreement.

AGREED ISSUES OF LAW

25. California law governs the claims between the parties.

26. No punitive damages are sought by SPD against Promise or Success.

CONTESTED ISSUES OF LAW

27. Whether SPD is entitled to judgment as a matter of law on Success's turnover cause of action against SPD because SPD fully disputes the funds sought to be turned over.

28. Whether SPD breached the Agreement.

29. What amount of damages, if any, did Success sustain as a result of a breach.

30. Whether Plaintiff is entitled to an accounting.

31. Whether Plaintiff is entitled to recoupment of any amounts due under the Agreement.

32. Whether SPD is entitled to assert two claims, one against Success and one against Promise, given that there is only one source of funding for recovery.

33. Whether Success breached the Agreement.

34. Whether SPD performed under the Agreement.

35. What amount of damages, if any, did SPD sustain as a result of a breach.

36. Whether SPD is entitled to any damages against Success beyond ninety (90) days from termination.

37. Whether SPD's damages for termination of the Agreement without sufficient notice (if such notice was, in fact, insufficient) were known or foreseeable to Success at the time of the Agreement's formation.

38. Whether Promise engaged in intentional acts designed to induce a breach or disruption of the contractual relationship between SPD and Success.

39. Whether Promise is insulated from liability on SPD's claims for intentional interference with contract and intentional or negligent interference with prospective business advantage because Success, as a party to the Agreement, was a subsidiary of Promise.

40. Whether SPD's damages against Promise, which was not a party to the Agreement, are limited to ninety (90) days from termination.

41. Whether SPD's claims for tort recovery are barred by the economic loss rule.

42. Whether SPD's breach of contract, if any, bars its recovery.

EXHIBITS

43. The parties' joint exhibit list is attached hereto.

WITNESSES

44. For Plaintiff:

Live witnesses:

    a. Todd Mello (expert witness)
    Root Partners

1685 S. Colorado Blvd., Suite 242
Denver, CO 80222
(561) 239-2633

b. May call:

Brendan Bakir
c/o counsel for SPDs, Thomas Macauley

Mark Taylor and/or Stuart Brown.  May call either or both (live or by declaration) for attorneys' fees issues if attorneys' fees are awarded by the Court.

Witnesses to be presented by deposition testimony[1]:

c. George Watkins
c/o counsel, Vandad Khosravirad, Law Offices of Steven Goldsobel, 1901 Avenue of the Stars, Suite 1750, Los Angeles, CA 90067, (310) 552-4848. Mr. Watkins resides in California

d. James Hopwood
c/o counsel, Shea Sullivan, Burr & Forman, 1075 Peachtree St NE, Suite 3000, Atlanta, GA 30309, (404) 685-4268. Mr. Hopwood resides in Texas.

e. Brendan Bakir, if SPD does not present Mr. Bakir live.

45. For SPD:

Live witnesses:

Brendan Bakir

G. Christopher Louis (expert)

Witnesses by deposition testimony

George Watkins

James Hopwood

---

[1] The parties have exchanged deposition designations and will supply the Court with copies of the deposition transcripts highlighted to show the parties' designations.

The parties reserve the right to call any witness necessary for rebuttal, or any witness designated by the other side, and to cross-examine any witnesses.

STATEMENTS REGARDING CLAIMS OF PARTIES

Success has the burden of proof for its affirmative claims for breach of contract, turnover, and accounting.  SPD has the burden of proof with respect to its Affirmative Defenses.

With respect to the claim objections, Plaintiffs have the burden "to negate the prima facie validity of the filed claim," by producing evidence "which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.  *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173-74 (3d Cir. 1992).  If the Plaintiff do so, the burden then reverts to SPD "to prove the validity of the claim by a preponderance of the evidence."  *Id.* at 174.  The burden of persuasion is always on the claimant. *Id.*

46. Plaintiff:

    a.  SPD has failed to pay the sum of $1,321,019.00 due under the Agreement.

    b.  SPD breached the Agreement.

    c.  Success properly terminated the Agreement.

    d.  Even if Success did not properly terminate the Agreement, SPD's damages are limited to, at most, ninety (90) days of expected profit under the Agreement, along with any amounts due for the four-month runoff provision (which overlaps with the 90 days) under §4.5 of the Agreement, and any asset value.

    e.  SPD's theory that it could simply move its practice to another hospital does not increase these amounts, both because of the law restricting the damages and because there was no viable alternative hospital to move the practice.

    f.  SPD's recovery in tort is barred by the economic loss rule.

47. SPD:

    a.  Success terminated the Agreement without cause and without sufficient notice under the Agreement.

    b.  Promise caused Success to terminate the Agreement notwithstanding the value of SPD's spine program to Silver Lake.

    c.  The lack of notice to SPD did not allow SPD time to move the Surgical Program and scheduled surgeries to another hospital and for surgeons to apply for privileges at the other hospital.

    d.  As a result, SPD has zero value as a result of the termination. Accordingly, the damages to SPD are measured by the value of the program immediately prior to Silver Lake's cancellation of surgeries and termination of the Agreement.

    e.  The ninety-day provision in the Agreement for termination does not limit SPD's contract damages to 90 days of lost profits because, at the time of the Agreement's formation, SPD communicated to Success and Promise the reasons for needing the 90-day provision. Moreover, SPD's damages were foreseeable to Success and Promise as entities that operate hospitals and provide surgeons with surgical privileges.

    f.  Thus, SPD's damages are the value of its business immediately prior to termination of the Agreement.

    g.  The amounts asserted by Success to be due under the Agreement are vastly overstated. Moreover, any amounts due to Success under the Agreement

would have been paid in full in the ordinary course of business if not for the termination of the Agreement.

## AMENDMENTS TO PLEADINGS

48. None anticipated at this time.

## SETTLEMENT EFFORTS

49. The parties have participated in two mediation sessions, but did not reach a settlement.

**THIS ORDER SHALL CONTROL THE SUBSEQUENT COURSE OF THE ACTION UNLESS MODIFIED BY THE COURT TO PREVENT MANIFEST INJUSTICE.**

**Dated: June 4th, 2025**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**