# Exhibit 1

## COLLECTIONS AND MANAGEMENT SERVICES AGREEMENT

This collection agreement (the "Agreement"), effective JUNE 1, 2010 ("Effective Date"), is made and entered into by and between Surgical Program Development, LLC, a California limited liability company, ("Company"), and Success Healthcare 1, LLC, a California limited liability company dba Silver Lake Medical Center ("Hospital").

### RECITALS

A.    Hospital owns and operates a general acute care hospital licensed pursuant to California Health and Safety Code Section 1250, and located at 1711 W. Temple St., Los Angeles, CA 90026.

B.    Hospital provides inpatient services to patients for which it concurrently and/or subsequently seeks payment. From time to time, Hospital may need or desire assistance in collecting payments for claims submitted to private insurance payers, Workers' funds or payers, and/or personal injury liens (collectively, "Payers," and each a "Payer"), but excluding Medi-Cal and Medicare reimbursed services, as well as other assistance in connection with the conduct of its surgical programs.

C.    Company is experienced in submitting claims for payment and collecting reimbursement from Payers for healthcare services provided by hospitals and other healthcare providers. Company is also experience in furnishing certain consulting services in connection with hospital surgical programs.

D.    Hospital desires to retain the services of Company on the terms and conditions set forth herein, to provide for the timely and cost-effective collection of certain of Hospital's claims for reimbursement from Payers for services provided by Hospital to patients ("Claims") and for certain consulting services in connection with Hospital's surgical programs, and Company desires to provide such services.

NOW, THEREFORE, in consideration of the above recitals, terms and conditions hereinafter set forth, Hospital and Company agree as follows:

1.    Collection Services. Hospital appoints Company as its billing agent and administrator for the purposes described in this Agreement and retains Company to provide all services reasonably necessary for collection of certain of Hospital's Claims for inpatient services, including but not limited to those for Hospital's services in connection with certain spinal or other surgery for related occupational injury or illness ("Collection Services").

1.1    Claims. Hospital will identify to Company all Claims relating to Hospital's inpatient services in connection with spinal surgeries for which it requests Company to provide Collection Services. Hospital may also identify inpatient Claims in addition to spinal surgery related services, for which Hospital may request Company to provide Collection Services. Hospital shall provide all information and documentation reasonably requested by Company ("Documentation") in support of such Claims. Such Documentation includes but is not limited to: a properly completed UB-92 claim form, additional invoices for implants and/or

1029788.1

Initials: Hospital ___ Company ___

ENTERED JUN 08 2010

EXHIBIT

SPD-1

biologics, medical reports including patient history and/or physical exam, operation reports, discharge information, liens, proofs of service, and any other relevant information and/or documentation. Company shall then decide in its sole and absolute discretion whether to accept or reject such Claims for the provision of Collection Services. Notwithstanding the foregoing, Company shall not have the right to reject any Claim for which Company had assisted Hospital with the required case pre-authorization process.

1.2    Performance of Collection Services Generally.    Company will be responsible for the performance of all Collection Services in a professional and competent manner. Company shall regularly consult with Hospital administration concerning Collection Services. Company shall devote the time, attention and energy necessary for the competent and effective performance of Company's duties hereunder. Company shall comply and shall require each of its employees to comply at all times during the term of this Agreement, with all applicable state and federal statutes and regulations related to its activities. Company shall not remove any original file without Hospital's express written authorization. Company shall comply with all applicable laws in a manner so as not to reflect unfavorably upon Hospital or jeopardize any of Hospital's licenses, certifications or permits. Company shall obtain and maintain in effect all licenses, certifications and permits legally required for performance of Collection Services.

1.2.1    Engagement of Third Parties.    From time to time Company may, in its sole and absolute discretion, engage third parties to assist Company in performing Collection Services. Both Parties agree to abide by the terms of the Third Party Engagement Addendum attached hereto and incorporated by reference herein as Attachment A.

1.3    Books and Records.    Company will keep and maintain for seven (7) years from the date of termination of this Agreement, detailed books, records and other documentation, whether in written or electronic form, pertaining to its Collection Services, including notes, logs, and correspondence pertaining to beneficiaries, services rendered by Hospital, and/or Payers against whom payment is sought by Hospital. Such obligations survive termination of this Agreement. Company shall promptly permit Hospital to access its records relating to the Collection Services upon request.

1.4    Reports.    Hospital shall, at least monthly, provide Company with a written schedule identifying the Claims it has referred to Company for Collection Services which Company has accepted ("Referred Cases"), including any amounts already collected by Hospital in connection with each Referred Case. Company shall, at least monthly, provide Hospital with a detailed written report on the status of collection of each Referred Case containing such information as Hospital may reasonably request.

1.5    Hospital's Right to Audit Collection Services.    Company shall permit Hospital to audit, within a reasonable time of its request and during normal business hours, Company's reports submitted pursuant to the requirements of this Agreement. Company shall cooperate with any compliance program established by Hospital during the term hereof, including without limitation, giving Hospital and its representatives access to all claim records, data information, and software required by Hospital or Hospital's authorized agent who performs

10797003                                    2          Initials: Hospital _____ Company _____

such audit. Hospital may challenge any invoice submitted by Company within a reasonable time of receipt thereof.

1.6    Company's Right to Audit Hospital Collections. Hospital shall permit Company to audit, within a reasonable time of its request and during normal business hours, Hospital's reports submitted pursuant to the requirements of this Agreement. Hospital shall cooperate with any such audit, including without limitation, giving Company and its representatives access to all claim records, data information, and software required by Company or Company's authorized agent who performs such audit.

2.    Hospitals' Duties.

2.1    New Vendors. Prior to entering into any agreements, or other financial relationships, with any new vendors relating to spinal surgeries, including but not limited to advertisers, marketers, Durable Medical Equipment suppliers ("Vendors"), Hospital will give Company thirty (30) days written notice of such proposed relationship. Company will investigate and review such vendors for issues such as regulatory compliance, reputation, and relationships with other hospitals. Company will report its findings and recommendations to the Hospital. Hospital is not bound by such recommendations.

2.2    Negotiation and Settlement of Claims. Company shall have the sole authority to negotiate the resolution of Referred Cases with Payers. Company shall obtain Hospital's approval, which shall not be unreasonably withheld, for any settlement of a Claim in an amount that is less than the amount that the Hospital would reasonably have expected to receive from the Payer.

2.3    Negotiations with Payers. Hospital may negotiate with Payers regarding matters other than the settlement of Referred Cases. Hospital shall notify company of any negotiations with Payers and seek Company input regarding the effects such negotiations may have on different programs.

3.    Guaranteed Minimum Collection and Compensation.

3.1    Separate Itemization of Hardware. The bills submitted by Company on behalf of Hospital for the Referred Cases will separately itemize the hardware used in the case apart from the other items and services furnished by Hospital. The parties hereto anticipate that the amount paid by the Payers for the hardware will be separately identified by the Payers apart from the amount paid for other items and services. Hardware (the "Hardware") includes any implantable device implanted in the patient during the surgical procedure, such as screws, cages and rods. The amount of the payment made by or on behalf of a Payer for the Hardware is referred to hereinafter as the "Hardware Payment." The amount of payment made by or on behalf of a Payer for all other items or services is referred to hereinafter as the "DRG Payment." The DRG Payment includes all amounts paid by or on behalf of the Payer for items and services other than Hardware whether paid in a single payment or in multiple payments, and whenever and however made, including without limitation all amounts paid for such items or services as part of a settlement of a Referred Case.

1070760.2    3    Initials: Hospital _____ Company _____

3.2    Compensation.    In consideration for Company's Collection Services rendered to or on behalf of Hospital, and other services furnished by Company to Hospital under this Agreement, Hospital shall pay Company for each Referred Case the amount, if any, by which the sum of (a) the amounts paid to the Hospital for the Referred Case by or on behalf of the Payer, whenever paid, plus (b) all payments, if any, made by Company to Hospital for the Referred Case under paragraph 3.4 hereof, exceeds the sum of (x) the amount paid or payable by Hospital for the Hardware, plus (y) the DRG Guarantee as defined below (the "Compensation"). The Compensation shall be paid to Company within five (5) days of receiving payments from the Payer.

3.3    Minimum Guaranteed Collection.    Company guarantees that the amount of the DRG Payment for each Referred Case will be no less than fifty percent (50%) of the Hospital's published Medicare Diagnosis Related Group ("DRG") value of the Referred Case in effect on the date of the patient's discharge ("DRG Guarantee").

3.4    Payment of DRG Guarantee.    For each Referred Case, Company and Hospital shall determine the amount, if any, by which the DRG Guarantee exceeds the DRG Payment, if any, as of the 90th day after Company's receipt from Hospital of a properly completed UB-92 billing form (the "Determination Date"), or any successor form, for the Referred Case (the "Shortfall"). Company shall pay Hospital the amount of the Shortfall on or before the tenth (10th) day following the Determination Date.

3.5    Continual Obligation.    The amount of the Compensation for a Referred Case shall be recomputed each time a payment is received by Hospital for the Referred Case, and the amount of the Compensation that has not previously been paid by Hospital to Company shall paid by Hospital to Company within five (5) days after receiving any payment for the Referred Case. This provision and paragraph 3.4 shall survive termination of this Agreement.

3.6    No Payment to Company.    No payment shall be made to Company for any Collection Services, and Company shall have no rights with respect to any Referred Case, unless and until monies are actually paid by a Payer or anyone on such Referred Cases and received by Hospital. Hospital is not obligated to pay any other fees or costs to Company, including any expert/witness fees, attorneys' fees, interest, or filing fees required for Company to effectively perform its Collection Services. All payments by Payers or others with respect to a Referred Case are to be made payable solely to "Success Healthcare 1, LLC" or as Hospital may otherwise direct in writing and are to be delivered to Hospital directly, and not to Company. All settlements and orders for payment of Claims must reflect that payment shall be made solely to "Success Healthcare, 1 LLC" or as Hospital may otherwise direct in writing and are to be delivered to Hospital directly.

4.    Term, Renewal and Termination.

4.1    Term.    The initial term of this Agreement shall be for a period of one (1) year, commencing on the Effective Date unless it is terminated sooner, as set forth below. Thereafter, the term of this Agreement shall automatically renew for successive one (1) year periods unless earlier terminated by the parties in accordance with this Agreement.

1079700.3                                    4                    Initials: Hospital _____ Company _____

4.2    Mutual Termination. This Agreement may be terminated at any time upon the written mutual consent of the parties.

4.3    Termination Without Cause. Either party may terminate this Agreement without cause upon giving ninety (90) days written notice to the other party.

4.4    Termination With Cause. In the event of a material breach of this Agreement, the non-breaching party may terminate this Agreement by giving the breaching party at least thirty (30) days prior written notice.

4.4.1    Notice and Cure. Any termination notice given for cause pursuant to Section 4.4 above shall be accompanied by a notice of defects specifying any defects arising under this Agreement and shall include suggested methods for curing such defects. The party receiving such notice of defects shall have ten (10) business days from the receipt of the same to cure such defects, if curable, except that if such defect cannot reasonably be cured within such ten-day period and the party has diligently commenced to cure such defect promptly within such ten-day period, such ten-day period shall be extended for such reasonable period as it shall require the breaching party, in the exercise of due diligence, to cure such defect, provided, however, that in no event shall this period be extended for more than thirty (30) days . If the defects have been cured at the end of the ten (10) business day period, or if the defects have been cured within such reasonable period as required in the exercise of due diligence, the termination notice which accompanied the notice of defects shall be rendered inoperative and shall be null and void.

4.5    Effect of Termination. Upon termination of this Agreement, Company shall continue to perform Collection Services for the Referred Cases currently assigned to Company at such time, until (a) Hospital has received payment from the Payer for the Referred Case in the maximum amount Company determines the Payer will likely pay for the case, (b) an Order to Pay Lien (or similar court order) has been entered, or a settlement agreement has been executed by all parties, (c) one hundred twenty (120) days has passed since Company accepted the Referred Case, or (d) Hospital withdraws such Referred Case(s) pursuant to Section 5 below, whichever comes first. For all Referred Cases continuing beyond termination, other than those withdrawn pursuant to Section 5, all provisions of Section 3 shall survive termination and continue to be in effect as applicable.

4.6    Return of Documentation. Upon termination of this Agreement and completion of any outstanding Referred Cases pursuant to Section 4.5, Company shall return to Hospital, without assessment of any fees, charges or penalties, all books, files, records, correspondence and all other Documentation (whether electronically or manually generated or stored) related to any Referred Cases, including but not limited to all information supplied to Company by Hospital.

5.    Withdrawal by Hospital or Return by Company of Referred Cases.

5.1    Withdrawal. Hospital may withdraw a Referred Case from Company if such Referred Case is subject to litigation or either party has terminated the Agreement pursuant

10/9700 3

5

*Initials: Hospital* ___ *Company* ___

to Section 4. Hospital must notify Company, in writing, to stop its efforts and return its files pertaining to such accounts.

    5.2    Return. Company may return a Referred Case to Hospital if Company has terminated the Agreement for cause or Hospital has terminated the Agreement.

    5.3    Effect of Withdrawal or Return. In the event that Hospital withdraws a Referred Case from Company or Company returns a Referred Case to Hospital, the provisions of Section 3 shall not apply. Instead, Hospital shall pay Company fifty percent (50%) of any amount actually paid to Hospital by Payers or others in relation to such Referred Case within five (5) business days of receiving such payment. Company shall not owe to Hospital the DRG Guarantee, or any portion thereof, for such withdrawn Referred Cases.

    5.4    Return of Documentation. Upon Hospital withdrawing any Referred Cases from, Company shall return to Hospital, without assessment of any fees, charges or penalties, all books, files, records, correspondence and all other Documentation (whether electronically or manually generated or stored) related to the Referred Cases, including but not limited to all information supplied to Company by Hospital.

    5.5    Substitutions. Within five (5) business days of withdrawal or return of a Referred Case, Company shall cooperate with the preparation of, and promptly sign all substitutions of attorney/representative that may be necessary, substituting Hospital or its designee, into each Referred Case that is withdrawn. Any authorizations for representation shall be void and ineffective upon withdrawal. Company shall also provide Hospital with an accurate calendar of all future dates that have been scheduled for appearance, hearing, or other action in cases in which Company represented Hospital within a sufficient amount of time for Hospital to arrange to send a representative to hearings and appearances

    6.    No Contract Authority. Nothing contained in this Agreement is intended to, nor shall it be construed to, confer upon Company any authority to enter into any contract or agreement affecting or binding Hospital without first obtaining Hospital's written consent, other than typical stipulations entered into regarding settlement of Claims in the course of performing Collection Services.

    7.    Settlement Authority. Company shall have the full authority to settle any Referred Case on such terms as Company in its sole discretion shall determine. Hospital hereby appoints Company its attorney-in-fact for the purposes of negotiating and entering into settlements of Referred Cases on behalf of Hospital.

    8.    Cooperation with Compliance Efforts of Hospital. Company agrees to cooperate with Hospital as necessary so that Hospital and Company meet all requirements imposed by law or ordinance or established by the rules and regulations of any federal, state or local agency, department, commission, association or other governing or advisory body having authority to set standards governing the operation of Hospital and the activities of Company.

    9.    Independent Contractor.

*Initials:* Hospital ___ Company ___

9.1    No Relationship.    No relationship of employee or employer is created by this Agreement. It is understood by the parties to this Agreement that Company, its employees, agents, and representatives shall act hereunder as independent contractors and in no other relationship to either Hospital or its management company. Neither Company nor its employees, agents or representatives shall have any claim under this Agreement or otherwise against Hospital for any benefits usually associated with employment, including, but not limited to: vacation pay, sick leave, retirement benefits, Social Security benefits, workers' compensation benefits, insurance coverage, unemployment compensation benefits, or any other employee-type benefits whatsoever. Hospital shall neither have nor exercise control or direction over the methods or materials by which Company and/or its personnel perform their work and functions. Company and/or its personnel shall perform their work and functions, at all times, in strict accordance with the currently approved methods and practices in their field, and the sole interest of Hospital is to ensure that said Collection Services are performed in a competent, efficient, legal, and satisfactory manner in accordance with standards reasonably required by the Hospital. Company shall maintain throughout the term hereof workers' compensation insurance coverage for each of its employees and provide Hospital with proof of coverage upon request.

9.2    Collection Services Costs.    Company is solely responsible for all costs and expenses associated with Collection Services, including filing fees, travel expenses, appearance fees, taxes, penalties, photocopying, messenger fees, postage, telephone, secretarial services, insurance, equipment, maintenance and supplies, legal services, clerical services, representative fees, the engagement of third parties, and the like.

10.    Compliance.

10.1    HIPAA.    Company agrees to comply with the applicable provisions of the Administrative Simplification section of HIPAA, as codified at 42 U.S.C. § 1320d through d-8 ("HIPAA"), and the requirements of any regulations promulgated thereunder including, without limitation, the federal privacy regulations as contained in 45 C.F.R. Part 142 (collectively, the "Regulations"). Company agrees not to use or further disclose any protected health information, as defined in 45 C.F.R. § 160.103 and/or 45 C.F.R. § 164.504, or individually identifiable health information, as defined in 42 U.S.C. § 1320d (collectively, the "Protected Health Information"), concerning any patient of Hospital other than as permitted by this Agreement and the requirements of HIPAA or the Regulations. Company will implement appropriate safeguards to prevent the use or disclosure of Protected Health Information other than as contemplated by this Agreement. Company will promptly report to Hospital any use or disclosure, of which Company becomes aware, of Protected Health Information in violation of HIPAA or the Regulations. In the event that Company contracts with any agents to whom Company provides Protected Health Information, Company shall include provisions in such agreements pursuant to which Company and such agents agree to the same restrictions and conditions that apply to Company with respect to Protected Health Information. Company will make its internal practices, books and records relating to the use and disclosure of Protected Health Information available to the Secretary of the United States Department of Health and Human Services to the extent required for determining compliance with HIPAA and the Regulations.

1079380.3                                7                    Initials: Hospital _____ Company _____

10.2    Business Associate Addendum. Company agrees to abide by the terms of the HIPAA Business Associate Addendum attached hereto and incorporated by reference herein as Attachment B.

10.3    Access to Books and Records.

10.3.1    Required Access for "Secretary" and "Comptroller General." Company shall make available, upon written request from the Secretary of the United States Department of Health and Human Services (the "Secretary"), or upon the request from the Comptroller General of the United States General Accounting Office (the "Comptroller General"), or any of their duly authorized representatives, respectively, a copy of this Agreement and such books, documents, and records as are necessary to verify the nature and extent of the costs of the services provided by Company under this Agreement. Company further agrees that if Company carries out any of its duties under this Agreement through a subcontract with a value or cost of Ten Thousand Dollars ($10,000.00) or more over a twelve (12) month period with an agent, such contract shall contain a clause to the effect that the agent shall make available, upon request from the Secretary, or upon request from the Comptroller General, or any of their duly authorized representatives, respectively, a copy of such contract and such books, documents, and records as are necessary to verify the nature and extent of such costs. The availability of Company's books, documents and records shall be subject at all times to all applicable legal requirements, including, without limitation, such criteria and procedures for seeking and obtaining access that may be promulgated by the Secretary in federal regulations.

10.3.2    Required Access for Hospital. Company shall provide Hospital with all information, records and any other documents related to the performance of Collection Services hereunder, and shall promptly, at Hospital's request, provide Hospital with copies of any books, documents, and records released to the Secretary or Comptroller General pursuant to this Section.

10.4    Survival. The rights of the Secretary and Comptroller General and the rights of Hospital pursuant to this Section shall survive the expiration or other termination of this Agreement.

11.    Fair Value Warranty. Each party represents and warrants on behalf of itself, that the aggregate benefit given or received under this Agreement has been determined in advance through a process of arms-length negotiations that were intended to achieve an exchange of goods and/or services consistent with fair market value under the circumstances, and that any benefit given or received under this Agreement is not intended to induce, does not require, and is not contingent upon, the admission, recommendation or referral of any patient, directly or indirectly, and further, is not determined in any manner that takes into account the value of business generated between the parties.

12.    Assignment.

12.1    No Assignment of Claims. Nothing contained in this Agreement is intended to, nor shall it be construed to, constitute an assignment by Hospital to Company of any Claim or account receivable, which will remain the sole property of Hospital.

1979700.3                                     8              Initials: Hospital _____ Company _____

12.2    Assignment of Collection Services.    Company, in its sole and absolute discretion, may assign its Collection Service duties to a third party.

13.    Notices.    Required notices shall be in writing.  These notices shall be deemed given when personally delivered, the next business day after deposit with a nationally recognized overnight carrier, and the third business day after deposit in the Unites States mail, certified, and with proper postage prepaid, and shall also be delivered via facsimile, addressed as follows:

If to Hospital:
Success Healthcare 1, LLC
999 Yamato Road, Third Floor
Boca Raton, FL 33431
Attention: Steve Popkin, CEO

With a Copy to:
[Attorney]

If to Company:
Surgical Program Development, LLC
18000 Studebaker Road, Suite 330
Cerritos, California 90703
Attention: Brendan Bakir

With a Copy to:
Lloyd Bookman, Esq.
Hooper, Lundy & Bookman, Inc.
1875 Century Park East, Suite 1600
Los Angeles, CA 90067

Any party may change its address or contact information for the purpose of receiving notices, demands, or other communications provided herein by giving a written notice in the manner stated above to the other party or parties stating such change of address.

14.    No Implied Waiver of Breach.    Any waiver of any term and condition hereof must be in writing and signed by the party against whom it is asserted.  A party's neglect or failure in any case or circumstance to require performance of the other party's obligations or to enforce its rights in the event of a breach by the other party shall not affect such party's right to enforce such rights and obligations in any other case or circumstance.  A waiver of any individual term or condition shall not be construed as a waiver of any other term or condition nor, unless so provided in such written waiver, of the term or condition thereby waived in the event of a future or continuing breach by the other party, except in the particular circumstance(s) in or for which such waiver was provided.

15.    Succession.    This Agreement applies to, inures to the benefit of and binds all parties hereto, their heirs, devisees, legatees, executors, administrators, representatives, successors and assigns.

16.    Amendment.    This Agreement may only be amended in a writing signed by authorized representatives of the parties hereto.

17.    Further Acts.    At any time after execution of this Agreement, the parties shall sign and deliver, or cause others to do so, all such documents and instruments or do or cause to be done all such acts and things reasonably necessary to carry out the provisions of this Agreement.

9        Initials: Hospital _____ Company _____

17.1    Venue. The parties agree that the County of Los Angeles, California shall be the only proper venue for disputes related to this Agreement, including arbitration.

18.    Disputes/Arbitration. Upon the request of either party, any controversy or claim (whether such claim sounds in contract, tort or otherwise) arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration in accordance with California Code of Civil Procedure Sections 1280 *et seq.*, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. An arbitrator shall be selected from JAMS and the arbitration shall be conducted in accordance with JAMS' current rules for streamlined arbitration. Notwithstanding any other provision of this Agreement, in the case of a dispute involving a claim for equitable relief, a court with equitable jurisdiction may grant temporary restraining orders and preliminary injunctions to preserve the status quo existing before the events which are the subject of the dispute. Any final equitable or other relief shall be ordered in the arbitration proceeding. Each party shall pay an equal share of the fees and expenses of any arbitrator and any administrative fee of JAMS. Each party shall be responsible for its own attorneys' fees and costs.

Initials: Hospital _____ Company _____

19.    Severability. Should any one or more provisions of this Agreement be determined to be invalid or void, the balance of the provisions shall, nevertheless, remain in full force and effect.

20.    Time is of the Essence. Time is strictly of the essence under this Agreement and any amendment, modification or revision hereof.

21.    Confidentiality. The terms of this Agreement and all matters relating to billings of Hospital for services rendered to Hospital's patients are confidential and shall not be disclosed without the prior written approval of Hospital. Company shall implement policies and procedures satisfactory to Hospital that are designed to protect and preserve the confidential nature of the information it receives from Hospital and receives in the course of providing Collection Services, and shall provide Hospital with copies thereof.

22.    Authorized Signators. Each individual executing this Agreement on behalf of an entity represents and warrants that he or she is duly authorized to execute and deliver this Agreement on behalf of each respective entity in accordance with the governing and/or formation documents of said entity, and that all representations and warranties contained in this Agreement, or any documents referenced in this Agreement, are true and correct.

23.    Independent Counsel. Each party who is a signatory to this Agreement hereby acknowledges that he or it has had the opportunity to be represented by independent counsel of his or its own choice throughout all of the negotiations which preceded the execution of this Agreement, and that he or it has executed this Agreement freely, voluntarily and without any coercion whatsoever, with the consent and upon the advice of such independent counsel, or having knowingly waived the opportunity to obtain such advice. Each party further acknowledges that both he or it and his or its counsel, if any, have had adequate opportunity to make whatever investigation or inquiry deemed necessary or desirable in connection with the

subject matter of this Agreement prior to the execution hereof and the delivery and acceptance of the considerations specified herein and that each of them has reviewed such documents and information that he or it deems necessary or appropriate concerning this Agreement. Each Party hereto acknowledges that this Agreement has been drafted as a result of negotiations between the parties, and that its terms and provisions should be interpreted in accordance with their fair meaning and not in favor or against any one party.

24.    Entire Agreement.    This Agreement and the schedules and exhibits attached hereto constitute the entire agreement of the parties with respect to the subject matter hereof, and supersedes all prior understandings or agreements, whether written or oral, with respect to the subject matter hereof.

25.    Third Party Rights.    This Agreement shall not be construed as conferring upon any third party any right or benefit, and any and all claims that may arise hereunder may be enforced solely by Hospital or by Company.

26.    Change in Law.    The parties recognize that this Agreement is subject to applicable Federal, state, and local laws, rules and regulations now or hereafter in effect, and shall be subject to amendments of such laws, rules and regulations (collectively, "Law"). If the Law is amended or changed or existing or amended law is interpreted by judicial decision, announcement, an action letter, safe harbor provision, order or decision of a regulatory agency, or is read to provide, that the structure or substance of any part of this Agreement (a) is in violation of the Law or (b) may subject a party to this Agreement, or any affiliate of that party, or an employee, agent or director or trustee of any party to this Agreement or of any affiliate thereof to a significant and substantial risk of financial loss or penalty or criminal prosecution, then the Law shall be deemed to have superseded the terms of this Agreement, and either party shall be entitled to modify or terminate this Agreement immediately upon notice to the other party. Modifications to this Agreement made pursuant to this Section are limited to those modifications determined to be necessary to comply with a change of Law or other event described in this Section and, to the greatest extent possible, any such modifications shall preserve the terms and intent of this Agreement. If either party does not agree with such modifications, such party shall have the right to terminate this Agreement upon thirty (30) days' advance written notice to the other.

27.    Force Majeure.    Neither party shall be liable nor deemed to be in default for any delay or failure in performance under this Agreement or other interruption of service deemed resulting, directly or indirectly, from acts of God, civil or military authority, acts of public enemy, war, accidents, fires, explosions, earthquakes, floods, failure of transportation, machinery or supplies, vandalism, strikes or other work interruptions beyond the reasonable control of either party. However, both parties shall make good faith efforts to perform under this Agreement in the event of any such circumstances.

28.    Incorporation of Recitals and the Exhibits.    All recitals and the exhibits referred to in this Agreement are an integral part of this Agreement. They are incorporated in this Agreement by this reference as though at this point set forth in full.

197930.3                             11              Initials: Hospital A  Company PS

29.    Further Assurances.  Each party hereto shall furnish such information, execute such documents and take such action as the other party(ies) reasonably may request for the purpose of carrying out the intent of this Agreement.

30.    Meaning of Certain Words.  Wherever the context may require, any pronouns used in this Agreement shall include the corresponding masculine, feminine or neuter forms and the singular form of nouns shall include the plural and vice versa.  References to days in this Agreement shall mean calendar days, unless otherwise specified.

31.    Headings.  The headings in this Agreement are intended solely for convenience of reference and shall be given no effect in the construction or interpretation of this Agreement.

32.    Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

*[Remainder of page intentionally left blank]*

*[Signature page follows]*

IN WITNESS WHEREOF. the parties hereto have executed this Agreement on the day and year first written above.

EACH OF THE UNDERSIGNED HAS READ AND UNDERSTANDS THE TERMS AND CONDITIONS CONTAINED IN THIS AGREEMENT INCLUDING, WITHOUT LIMITATION, ALL WAIVERS CONTAINED IN THIS AGREEMENT, AND EACH INDIVIDUAL SIGNING THIS AGREEMENT IS AUTHORIZED BY EACH ENTITY WHOSE NAME APPEARS ABOVE HIS/HER NAME TO ENTER INTO THIS AGREEMENT ON ITS BEHALF.

HOSPITAL
Success Healthcare 1, LLC
dba Silver Lake Medical Center

By: _____
Name: Steve Popkin, CEO
Date:

COMPANY
Surgical Program Development. LLC

By: _____
Name: Brendan Hajer. CEO
Date:

107V700.3                          13          Initials: Hospital ___ Company ___

# Exhibit 2

## 2010 SPINE CASES

| Patient Name | Acct # | Patient City | Patient Zip Code | Admit Date | Disch Date | L.O.S. | Surgery Type | DRG Number |
|---|---|---|---|---|---|---|---|---|
| Morris, Debra | 311680-1 | Los Angeles | 90043 | 06/11/10 | 06/18/10 | 7 | S/P Laminectomy | 460 |
| Brown, Don | 311905-1 | Sunland | 91040 | 06/25/10 | 06/30/10 | 5 | Lumbar Fusion | 453 |
| Tran, Thoai | 311902-1 | Westminster | 92683 | 06/28/10 | 07/01/10 | 3 | Fusion C6-C7 Level | 473 |
| Rodriguez, Anthony | 312732-1 | Bakersfield | 93312 | 08/13/10 | 08/15/10 | 2 | **Laminotomy/Discectomy** | 491 |
| Alaniz, Jessica | 312733-1 | Oxnard | 93036 | 08/13/10 | 08/16/10 | 3 | Lumbar Fusion | 460 |
| Ruelas, Ruby | 312734-1 | Bakersfield | 93307 | 08/13/10 | 08/17/10 | 4 | Lumbar Fusion | 460 |
| James, Latrice | 312967-1 | La Palma | 90623 | 08/28/10 | 09/01/10 | 4 | Lumbar Fusion | 473 |
| Lopez, Sergio | 312774-1 | Corona | 92882 | 08/28/10 | 09/02/10 | 5 | Lumbar Fusion | 460 |
| Martinez, Teresita | 313427-1 | Santa Ana | 92707 | 09/24/10 | 09/27/10 | 3 | Cervical fusion | 473 |
| Steen, Maria | 313430-1 | Bakersfield | 93311 | 10/05/10 | 10/05/10 | 0 | **CANCELLED CASE** | N/A |
| Means, Pamela | 313562-1 | Northridge | 91325 | 10/05/10 | 10/13/10 | 8 | Lam, Posterior Fusion | 454 |
| Morgan, Crystal | 313781-1 | Hawthorne | 90250 | 10/30/10 | 11/02/10 | 3 | Lumbar Lam & Fusion | 460 |
| Ambriz, Rafael | 314065-1 | Oxnard | 93030 | 11/09/10 | 11/14/10 | 5 | S/P Anterior Post Fusion | 454 |
| Johnson, Rebecca | 314143-1 | Simi Valley | 93063 | 11/09/10 | 11/16/10 | 7 | Lumbar Fusion | 460 |
| Reza, Jose | 314099-1 | Baldwin Park | 91706 | 11/22/10 | 11/26/10 | 4 | S/P Lumbar Fusion | 455 |
| Martinez, Elvira | 314100-1 | Los Angeles | 90007 | 11/22/10 | 11/29/10 | 7 | Removal of Hardware Spine | 497 |
| Bayne, Judy | 314423-1 | Glendora | 91740 | 12/10/10 | 12/12/10 | 2 | Cervical Disc & Fusion | 473 |
| Larson, Drew | 314606-1 | Sugarloaf | 92386 | 12/14/10 | 12/17/10 | 3 | Bilat Lumbar Lam/Discectomy | 460 |
| Gonzalez, Rufugio | 314420-1 | Santa Ana | 92704 | 12/17/10 | 12/24/10 | 7 | Repeat Lumbar Lam/Decomp | 460 |

GW-00083

LARSON, DREW
DOB:03/15/1981  SEX: M  AGE: 29Y
Adm: 12/14/10
ADMT Phy: R. SHORTZ, MD 314608-1
O - WORK COMP ORHTO
Silver Lake Hospital

**DELIVERY TICKET**


**POWER SURGICAL, INC.**

| Qty | Part Number | Part Description | Lot # | Set # | Price | Ext Price |
|---|---|---|---|---|---|---|
| 2 | ELL210505 | 10 X 22 X 12MM STRAIGHT PEEK POWER SURGICAL CAGE | | | $ 11,020.00 | $ 22,040.00 |
| 2 | EMP730108 | 6.5 x 35MM POLY SCREW | | | $ 2,233.00 | $ 4,466.00 |
| 2 | EMP730109 | 6.5 x 40MM POLY SCREW | | | $ 2,233.00 | $ 4,466.00 |
| 2 | EMP730128 | 5.5 X 50MM LORDOSED ROD | | | $ 1,088.00 | $ 2,176.00 |
| 4 | EMP730100 | THREADED CAP | | | $ 870.00 | $ 3,480.00 |
| | | | | | Tax | $0.00 |
| | | | | | Delivery Fee | $0.00 |
| | | | | | TOTAL | $ 36,628.00 |

**Case Specifics (MUST BE COMPLETED)**

| | | |
|---|---|---|
| Patient Diagnosis: | DOB: | Biologics: |
| Procedure: Fusion cages and pedical screws L4-L5-S1 | Blood Loss: | |
| Procedure Time: | Ave. Implant Insertion Time: | |
| Procedure/Device Comments: | | |

*For Accounting Use Only*

Date received:
Date entered:
Initials:
SS Case#:

Agent/Agency:

Sales:

Cover Rep: BRAD MARSICANO

Hospital: Silver Lake Hospital

Surgeon: Roger Shortz, M.D.

Patient: LARSON, DREW

DOS: 14-Dec-10

Purchase Order#: A013255

(call PowerSurgical @ 562-924-4273 when PO# is ready)

Ship To Address:

Attn:

Street:

City/State/Zip:

Telephone:

Email:

Shipping Method:

Please check the levels completed:
- [ ] L12
- [ ] L23
- [ ] L34
- [ ] L45
- [ ] L5S1

Corporate Address:
30765 PCH #424
Malibu, CA 90265

| Overall Surgeon Experience with Products: | 1 (worst) | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 (best) |
|---|---|---|---|---|---|---|---|---|---|---|

**CONFIDENTIAL**

# PURCHASE REQUISITION

**Silver Lake Medical Center**
1711 West Temple Street
Los Angeles, California 90026

☐ Ingleside Campus     ☐ Downtown Campus

VENDOR: Power Surgical.

ATTN:

SHIP TO: Silverlake Medical Center.

DEPARTMENT: 

### INSTRUCTIONS TO REQUISITIONER
1. DO NOT WRITE IN SHADED AREAS.
2. COMPLETE ALL APPLICABLE BLOCKS.
3. APPROVAL REQUIRED ON ALL CAPITAL ITEMS PRIOR TO SUBMITTING REQUISITION.
4. ENGINEERING REVIEW REQUIRED ON ALL ELECTRICAL MECHANICAL ITEMS AND INSTALLATION PRIOR TO SUBMITTING REQUISITION TO PURCHASING.

**REQUISITION NUMBER**

THIS ORDER NUMBER MUST APPEAR ON ALL PACKAGES, INVOICES AND SHIPPING PAPERS.

### SELECT ONE

| | |
|---|---|
| ORDER | RENT |
| PRODUCT INFO | BORROW |
| RETURN | |

**P.O. NUMBER**
0012255

| P.O. DATE | DATE REQUIRED | TERMS | F.O.B. | SHIP VIA | TAXABLE ☐ YES | THIS ORDER IS ☐ ORIG. ☐ CONFIR |
|---|---|---|---|---|---|---|
| REQUESTED DATE 02.02.01 | DATE REQUIRED 02.02.11 | DEPT O.R. | PHONE EXTENSION 4124 | REQUESTED BY Tish | ☐ CAPITAL ☐ BUDGET (CAR) | ☐ SPECIAL ☐ NON-BUDGETED ☐ SERVICE |

| QTY. ORDERED | QTY. RECEIVED | UNIT | CATALOG I.D. # | DESCRIPTION | UNIT PRICE | EXT'D PRICE | COST CENTER |
|---|---|---|---|---|---|---|---|
| | | | | Patient name          DOCTOR. | | | |
| | | | | Larson Drew.          Shortz. | | | |
| | | | | | | | |
| | | | | please see attached. | | | |

| REQUESTING DEPT. HEAD/DATE | DIVISION CHIEF APPROVAL/DATE | CFO APPROVAL/DATE | CEO APPROVAL/DATE | | SALES TAX |
|---|---|---|---|---|---|
| ENGINEERING REVIEW REQUIRED ☐ NO ☐ YES | COMMENTS | | | | FRT/DEL. |
| | | | | | TOTAL |

### ADDITIONAL INFORMATION TO SELLER:
1. Deliveries accepted only FROM 8:30 A.M. to 4:30 P.M. MONDAY thru FRIDAY.
2. Itemized Packing List must accompany ALL deliveries.
3. Any potential Back Orders must be communicated to Purchasing in advance of anticipated partial delivery schedules.
4. F.O.B. Unless routing is clearly defined on this order, SELLER assumes responsibility for lowest transportation cost whether it be via Parcel Post, UPS, Vendor Truck, Common Carrier/Air, etc.

FORWARD INVOICES TO:
**SILVER LAKE MEDICAL CENTER**
1711 WEST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90026
ATTN: MEDICAL CENTER ACCOUNTS PAYABLE

AUTHORIZED SIGNATURE

0000096 8/1/00

White - Accounting   Canary - Purchasing   Pink - Requestor

**CONFIDENTIAL**

GW-00085

# Success Healthcare 1, LLC

| | |
|---|---|
| **Receiving Slip** | |

| Date | Page |
|---|---|
| Feb 7, 2011 | 1 |
| **Receipt Number** | |
| RCP4218 | |

1711 W. Temple Street
Los Angeles, CA 90026
**Phone:**    (213) 989-6100

**Purchase From:**

POWER SURGICAL, INC.
23852 PACIFIC COAST HIGHWAY #414
MALIBU, CA 90265

**Ship To:**

Los Angeles
1711 W. TEMPLE ST
LOS ANGELES, CA 90026

| Reference | Description | Contact | Vendor Number | PO Number |
|---|---|---|---|---|
| SURGERY | NORMAL TERM PAYMENT | Ruben | POW0002 | 0013255 |

| Item Number | Description | Qty. Ordered | Qty. Received | Unit/Price | Ext. Amount |
|---|---|---|---|---|---|
| MISC | ELL210505 10X22X12MM STRAIGHT PEEK POWER S | 2.00 | 2.00 | 11,020.00 | 22,040.00 |
| MISC | EMP730108 6.5X35MM POLY SCREW | 2.00 | 2.00 | 2,233.00 | 4,466.00 |
| MISC | EMP730109 6.5X40MM POLY SCREW | 2.00 | 2.00 | 2,233.00 | 4,466.00 |
| MISC | EMP730128 5.5X50MM LORDOSED ROD | 2.00 | 2.00 | 1,088.00 | 2,176.00 |
| MISC | EMP730100 THREADED CAP | 4.00 | 4.00 | 870.00 | 3,480.00 |

| | |
|---|---|
| **Comments:** | |
| | **Total Recept Amount** 36,628.00 |

**CONFIDENTIAL**

GW-00086

# Success Healthcare 1, LLC

| **Purchase Order** |

| Date | Page |
|------|------|
| Dec 14, 2010 | 1 |
| **Purchase Order Number** | |
| 0013255 | |

1711 W. Temple Street
Los Angeles, CA 90026
**Phone:**     (213) 989-6100

**Vendor Address:**
POWER SURGICAL, INC.
23852 PACIFIC COAST HIGHWAY #414
MALIBU, CA 90265

| Department/Ref. | Contact | Vendor Number | PO Date | Terms | Ship Via | Expected Arrival |
|---|---|---|---|---|---|---|
| SURGERY | Ruben | POW0002 | Dec 14, 2010 | N30 | WILLCA | |

| Qty. Order | Item Number | Description | Unit Cost | UOM | Unit Cost After Discount | Extended Price |
|---|---|---|---|---|---|---|
| 2 | MISC | ELL210505 10X22X12MM STRAIGHT PEEK POWER SURGICAL CAGE | 11,020.00 | EACH | 11,020.00 | 22,040.00 |
| 2 | MISC | EMP730108 6.5X35MM POLY SCREW | 2,233.00 | EACH | 2,233.00 | 4,466.00 |
| 2 | MISC | EMP730109 6.5X40MM POLY SCREW | 2,233.00 | EACH | 2,233.00 | 4,466.00 |
| 2 | MISC | EMP730128 5.5X50MM LORDOSED ROD | 1,088.00 | EACH | 1,088.00 | 2,176.00 |
| 4 | MISC | EMP730100 THREADED CAP | 870.00 | EACH | 870.00 | 3,480.00 |

**Comments:**

| Total purchase order | 36,628.00 |

# POWER SURGICAL, INC.

**INVOICE # 070211-002**

**Power Surgical**
30765 PCH, Malibu #424 CA, 90265

Date: 02/07/11

| Bill To: | SHIP TO: |
|---|---|
| **Accounts Payable**<br>Silver Lake Medical Center<br>1711 W. Temple St.<br>Los Angeles, CA 90026 | **Dept. of Surgery - OR**<br>Silver Lake Medical Center<br>1711 W. Temple St.<br>Los Angeles, CA 90026 |

| DOS | PATIENT | PO# | TERMS |
|---|---|---|---|
| 12/14/2010 | LARSON, DREW | #0013255 | Due Upon Payment |

| QTY | DESCRIPTION | UNIT PRICE | LINE TOTAL |
|---|---|---|---|
| 2 | 10 X 22 X 12MM STRAIGHT PEEK POWER SURGICAL CAGE | $11,020.00 | $22,040.00 |
| 2 | 6.5 x 35MM POLY SCREW | $2,233.00 | $4,466.00 |
| 2 | 6.5 x 40MM POLY SCREW | $2,233.00 | $4,466.00 |
| 2 | 5.5 X 50MM LORDOSED ROD | $1,088.00 | $2,176.00 |
| 4 | THREADED CAP | $870.00 | $3,480.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | Tax | $0.00 |
| | | Freight | $0.00 |
| | | Total | $36,628.00 |

*Please remit payment to:*
**Power Surgical**
**30765 Pacific Coast Highway, Suite #424**
**Malibu, CA 90265**
*Please FedEx Priority Overnight, bill to recipient*
*Acct. # 1672-5209-5*

Questions call: 562-924-4273
Thank you!

CONFIDENTIAL                                        GW-00088

## 2011 SPINE CASES

| Patient Name | Acct # | Patient City | Patient Zip Code | Admit Date | Disch Date | L.O.S. | Surgery Type | DRG Number |
|---|---|---|---|---|---|---|---|---|
| Martentes Casillas, Francisco | 314814-1 | Inglewood | 90304 | 01/07/11 | 01/09/11 | 2 | Lumbar Discectomy L5-S1 | 490 |
| Gonzalez, Rufugio | 314420-2 | Santa Ana | 92704 | 01/07/11 | 01/10/11 | 3 | Repeat Lumbar Lam/Decomp | 460 |
| Lopez, Raul | 315392-1 | Mentone | 92539 | 01/27/11 | 02/02/11 | 6 | Bilat Lumbar Lam/Discectomy | 460 |
| Gray, Suzette | 315384-1 | Rancho Cucamonga | 91730 | 02/01/11 | 02/03/11 | 2 | Anterior Cervical Discectomy | 473 |
| Oldaker, George | 315435-1 | Newbury Park | 91320 | 02/01/11 | 02/05/11 | 4 | Cervical fusion | 471 |
| Lusk, Michael | 314475-1 | Bakersfield | 93309 | 03/01/11 | 03/04/11 | 3 | Anterior Lumbar Fusion | 460 |
| Mendoza, Oscar | 315889-1 | Bakersfield | 93301 | 03/01/11 | 03/05/11 | 4 | Anterior Lumbar Fusion | 460 |
| Alferez, David | 315951-1 | Mentone | 92359 | 03/04/11 | 03/09/11 | 5 | Lumbar Lam & Fusion | 460 |
| Carranza, Leandro | 315704-1 | Palmdale | 93550 | 03/22/11 | 03/26/11 | 4 | Lumbar Interbody Laminectomy | 455 |
| Saldana, David | 316774-1 | Los Angeles | 90005 | 04/15/11 | 04/21/11 | 6 | L3-S1 Decomp Laminec Fusion | 460 |
| Gonzalez, Maria | 316974-1 | Riverside | 92505 | 04/25/11 | 04/30/11 | 5 | Lam/Disect/Decomp L4-5, L5-S1 | 460 |
| Lupercio, Heliodoro | 317200-1 | Bakersfield | 93307 | 05/06/11 | 05/12/11 | 6 | S/P Anterior/Posterior Lumbar Fusion | 455 |
| Saenz, Teodoro | 317218-1 | Bellflower | 90706 | 05/25/11 | 05/28/11 | 3 | ACDF C3-4 C4-5 | 473 |
| Rivas, Pete | 317141-1 | Claremont | 91711 | 05/25/11 | 05/30/11 | 5 | Lumbar Fusion L4-L5, TLIF | 460 |
| Moore, Carmelita | 315189-1 | Tustin | 92782 | 06/14/11 | 06/18/11 | 4 | Lam/Face/Fusion At Level L4-5 | 460 |
| Figueroa, Elder | 317892-1 | Glendale | 91205 | 06/23/11 | 06/26/11 | 3 | Lumbar Radiculitis S/P Ant/Post | 460 |
| Carbone, Michael | 318275-1 | Hisperia | 93245 | 07/18/11 | 07/18/11 | 0 | **CANCELLED CASE** | N/A |
| Gilchrist, Cynthia | 318117-1 | Westminster | 92683 | 07/18/11 | 07/18/11 | 0 | **CANCELLED CASE** | N/A |
| Rizo, Jesus | 317746-1 | Rancho Cucamonga | 91739 | 07/26/11 | 07/31/11 | 5 | Laminectomy & Lumbar Fusion | 459 |
| Castillejo, Augustin | 318391-1 | Arleta | 91331 | 07/26/11 | 08/01/11 | 6 | L3-4 L4-5 Lat Fusion & Lam & Fusion | 454 |
| Corterz, Roosevelt | 318486-1 | Moreno Velley | 92557 | 07/30/11 | 08/02/11 | 3 | Repeat Fusion | 460 |
| Ramirez, Miguel | 318487-1 | Moreno Velley | 92555 | 07/30/11 | 08/02/11 | 3 | Posterior Lumbar Fusion MicroDis | 460 |
| Slaughter, Anthony | 318007-1 | Cudahy | 90201 | 08/03/11 | 08/06/11 | 3 | Anterior and Posterior Fusion L5-S1 | 455 |
| Rosebaugh, Richard | 318506-1 | San Dimas | 91773 | 08/03/11 | 08/06/11 | 3 | Anterior Cervical Discectomy with Fusion | 473 |
| Simpson, Donnie | 318568-1 | San Bernardino | 92408 | 08/09/11 | 08/10/11 | 1 | C3-4 C4-5 C5-6 Ant Cerv & Fusion | 473 |
| Gilchrist, Cynthia | 318117-2 | Westminster | 92683 | 08/10/11 | 08/12/11 | 2 | Revision Cervical SX Spine | 491 |
| Carbone, Michael | 318275-2 | Hisperia | 93245 | 08/10/11 | 08/14/11 | 4 | S/P Laminectomy | 460 |
| Piraino, Mark | 319189-1 | Apple Valley | 92308 | 09/12/11 | 09/13/11 | 3 | Removal of Ant. Cerv Plate Fixation | 473 |
| Giles, Magdalena | 317731-2 | Orange | 92867 | 09/12/11 | 09/16/11 | 4 | Lam Disc & Decomp at L4-5, L5 S1 | 460 |
| Spence, Anthony | 319364-1 | Long Beach | 90810 | 09/19/11 | 09/23/11 | 4 | Posterior Spinal Fusion Lumbar Spine | 460 |
| Aviles, Martin | 318924-1 | Long Beach | 90813 | 10/03/11 | 10/07/11 | 4 | Bilat Lumber Laminectomy/Fusion | 460 |
| Wiley, Pat | 319757-1 | Wrightwood | 92397 | 11/03/11 | 11/05/11 | 2 | Cervical Disc & Fusion | 473 |
| Kastel, Katherine Lynne | 320172-1 | Tustin | 92780 | 11/03/11 | 11/07/11 | 4 | Anterior Cervical Disc and Fusion | 473 |
| Davis, Wayne | 320043-1 | Chino | 91710 | 11/07/11 | 11/09/11 | 2 | Microdecomp at I3-4/Lam Disc Decomp | 460 |
| Dubois, Suzanne | 319735-1 | Placenta | 92870 | 11/07/11 | 11/10/11 | 2 | Lam Disc Face w Postero Fusion | 460 |
| Salazar, Nick | 320099-1 | Monrovia | 91016 | 11/22/11 | 11/26/11 | 4 | Anterior Posterior Lumbar Fusion L5-S1 | 454 |
| Leyn, Judith | 320098-1 | Cypress | 90630 | 11/22/11 | 11/27/11 | 5 | Anterior Posterior L3-S1 & Hardware Rem | 454 |
| Montellano, Pedro | 320567-1 | Westminster | 92683 | 12/05/11 | 12/09/11 | 4 | Posterior Lumbar Fusion L4-L5 L5-S1 | 460 |
| Tran, Cau | 320381-1 | Monterey Park | 91755 | 12/06/11 | 12/09/11 | 3 | Anterior Cervical Disc/Fusion | 473 |
| Aldava, Jose | 320382-1 | Compton | 90221 | 12/06/11 | 12/09/11 | 3 | Lam/Disc/Face/Post Fusion I50s1 | 460 |
| Johnson, James | 320788-1 | Van Nuys | 91405 | 12/14/11 | 12/17/11 | 3 | Ant. Cervical Disc/Fusion | 473 |

**CONFIDENTIAL**

GW-00171

# Success Healthcare 1, LLC

1711 W. Temple Street
Los Angeles, CA 90026
Phone:   (213) 989-6100

| **Receiving Slip** |
|---|

| Date Apr 22, 2011 | Page 1 |
|---|---|
| Receipt Number RCP4828 | |

**Purchase From:**

SMITH & NEPHEW ORTHOPEDICS
P.O. BOX  933782
ATLANTA, GA 31193-3782
USA

**Ship To:**

Los Angeles
1711 W. TEMPLE ST
LOS ANGELES, CA 90026

| Reference | Description | Contact | Vendor Number | PO Number |
|---|---|---|---|---|
| SURGERY | NORMAL TERM PAYMENT | Ruben | SMI0003 | 0013668 |

| Item Number | Description | Qty. Ordered | Qty. Received | Unit/Price | Ext. Amount |
|---|---|---|---|---|---|
| 71823112 | V-D-R LCK PL STD HD 5H L 86MM | 1.00 | 1.00 | 857.00 | 857.00 |
| 71824012 | 3.5MM LP S-T  CRTX SCRW 12MM | 3.00 | 3.00 | 23.70 | 71.10 |
| 71825012 | 3.5MM S-T CRTX LCK SCRW 12MM | 2.00 | 2.00 | 130.00 | 260.00 |
| 71822422 | 2.5MM S-T CRTX LCK SCRW 22MM | 2.00 | 2.00 | 98.90 | 197.80 |
| 71822418 | 2.5MM S-T CRTX LCK SCRW 18MM | 1.00 | 1.00 | 98.90 | 98.90 |
| 71822424 | 2.5MM S-T CRTX LCK SCRW 24MM | 1.00 | 1.00 | 98.90 | 98.90 |
| 71822420 | 2.5MM S-T CRTX LCK SCRW 20MM | 1.00 | 1.00 | 98.90 | 98.90 |
| 71161016 | PERI-LOC K-WIRE 1.6MM | 1.00 | 1.00 | 69.93 | 69.93 |
| 71173555 | 2.0MM SHRT DRILL BIT W/QC | 1.00 | 1.00 | 102.00 | 102.00 |
| 71173362 | 2.7MM SHORT DRILL BIT W/QC | 1.00 | 1.00 | 91.65 | 91.65 |
| 71170036 | HEX SCREWDRIVER SHAFT | 1.00 | 1.00 | 247.00 | 247.00 |
| 71173459 | 2.0 SHRT LCK DRILL GD 1 PC | 1.00 | 1.00 | 185.00 | 185.00 |

Comments:

**Total Recept Amount**   2,378.18

# Success Healthcare 1, LLC

| Purchase Order |

| | Date | Page |
|---|---|---|
| | May 05, 2011 | 1 |
| | Purchase Order Number | |
| | 0013668 | |

1711 W. Temple Street
Los Angeles, CA 90026
Phone:    (213) 989-6100

**Vendor Address:**
SMITH & NEPHEW ORTHOPEDICS
P.O. BOX  933782
ATLANTA, GA 31193-3782
USA

| Department/Ref. | Contact | Vendor Number | PO Date | Terms | Ship Via | Expected Arrival |
|---|---|---|---|---|---|---|
| SURGERY | Ruben | SMI0003 | May 05, 2011 | PP | WILLCA | |

| Qty. Order | Item Number | Description | Unit Cost | UOM | Unit Cost After Discount | Extended Price |
|---|---|---|---|---|---|---|
| 1 | 71823112 | V-D-R LCK PL STD HD 5H L 86MM | 857.00 | EA | 857.00 | 857.00 |
| 3 | 71824012 | 3.5MM LP S-T  CRTX SCRW 12MM | 23.70 | EA | 23.70 | 71.10 |
| 2 | 71825012 | 3.5MM S-T CRTX LCK SCRW 12MM | 130.00 | EA | 130.00 | 260.00 |
| 2 | 71822422 | 2.5MM S-T CRTX LCK SCRW 22MM | 98.90 | EA | 98.90 | 197.80 |
| 1 | 71822418 | 2.5MM S-T CRTX LCK SCRW 18MM | 98.90 | EA | 98.90 | 98.90 |
| 1 | 71822424 | 2.5MM S-T CRTX LCK SCRW 24MM | 98.90 | EA | 98.90 | 98.90 |
| 1 | 71822420 | 2.5MM S-T CRTX LCK SCRW 20MM | 98.90 | EA | 98.90 | 98.90 |
| 1 | 71161016 | PERI-LOC K-WIRE 1.6MM | 69.93 | EA | 69.93 | 69.93 |
| 1 | 71173555 | 2.0MM SHRT DRILL BIT W/QC | 102.00 | EA | 102.00 | 102.00 |
| 1 | 71173362 | 2.7MM SHORT DRILL BIT W/QC | 91.65 | EA | 91.65 | 91.65 |
| 1 | 71170036 | HEX SCREWDRIVER SHAFT | 247.00 | EA | 247.00 | 247.00 |
| 1 | 71173459 | 2.0 SHRT LCK DRILL GD 1 PC | 185.00 | EA | 185.00 | 185.00 |

Comments:

| Total purchase order | 2,378.18 |
|---|---|

**CONFIDENTIAL**

GW-00173

# smith&nephew

Orthopaedics
Smith & Nephew, Inc.    www.smith-nephew.com
1450 Brooks Road
Memphis, TN 38116
USA

Telephone: 901-396-2121
Information: 1-800-821-5700
Orders/Inquiries: 1-800-238-7538

Bill-to address
SILVER LAKE MEDICAL CENTER
ATTN: ACCOUNTS PAYABLE
1711 W Temple St
Los Angeles CA  90026-5421

Ship-to address
SILVER LAKE MEDICAL CENTER
ATTN: ACCOUNTS PAYABLE
1711 W Temple St
Los Angeles CA  90026-5421

## Order confirmation

| | |
|---|---|
| Sales Order Number | Date |
| 7277311 | 04/22/2011 |
| Customer Number | |
| 244863 | |
| P.O. Number | P.O. Date |
| *0013668* | |
| Delivery date | Fax Date |
| 04/22/2011 | 05/04/2011 |
| Ship Via | Faxed To |
| Delivered | 562-425-2089 |
| Customer Service Rep | Distributor |
| | LOS ANGELES DIST |

**PLEASE NOTE CURRENT S&N PRICING**

Patient ID: uribe, sofia

Surgery Date: 04/21/2011

SURGEON: Dr Jerome Paige

| Item | Material | Description | Price | Curr | Value | Qty-Ord | | Sh B/O |
|---|---|---|---|---|---|---|---|---|
| 000010 | 71823112 | V-D-R LCK PL STD HD 5H L 86MM | 857.00 | USD | 857.00 | 1 | EA | 1 |
| 000020 | 71824012 | 3.5MM LP S-T CRTX SCRW 12MM | 23.70 | USD | 71.10 | 3 | EA | 0 |
| 000030 | 71825012 | 3.5MM S-T CRTX {} LCK SCRW 12MM | 130.00 | USD | 260.00 | 2 | EA | 0 |
| 000040 | 71822422 | 2.5MM S-T CRTX LCK SCRW 22MM | 98.90 | USD | 197.80 | 2 | EA | 0 |
| 000050 | 71822418 | 2.5MM S-T CRTX LCK SCRW 18MM | 98.90 | USD | 98.90 | 1 | EA | 0 |
| 000060 | 71822424 | 2.5MM S-T CRTX LCK SCRW 24MM | 98.90 | USD | 98.90 | 1 | EA | 0 |
| 000070 | 71822420 | 2.5MM S-T CRTX LCK SCRW 20MM | 98.90 | USD | 98.90 | 1 | EA | 0 |
| 000080 | 71161016 | PERI-LOC K-WIRE 1.6MM | 210.00 | USD | 69.93 | 0.333 | BX | 0 |
| | | Please note agreed price per: | | | | | | |
| 000090 | 71173555 | 2.0MM SHRT DRLL BIT W/QC | 102.00 | USD | 102.00 | 1 | EA | 0 |
| 000100 | 71173362 | 2.7MM SHORT DRILL BIT W/QC | 91.65 | USD | 91.65 | 1 | EA | 0 |
| 000110 | 71170036 | HEX SCREWDRIVER SHAFT | 247.00 | USD | 247.00 | 1 | EA | 1 |
| 000120 | 71173459 | 2.0MM SHRT LCK DRILL GD - 1 PC | 185.00 | USD | 185.00 | 1 | EA | 0 |
| 000130 | 004537T | SHIPPING AND HANDLING | 1.00 | USD | 75.00 | 75 | EA | 0 |

Order Total    2,453.18



**CONFIDENTIAL**    GW-00174

# PURCHASE REQUISITION

**Silver Lake Medical Center**
1711 West Temple Street
Los Angeles, California 90026

☐ Ingleside Campus          ☐ Downtown Campus

V E N D O R

S H I P   T O

ATTN:                          DEPARTMENT: _Surgery_

**INSTRUCTIONS TO REQUISITIONER**

1. DO NOT WRITE IN SHADED AREAS
2. COMPLETE ALL APPLICABLE BLOCKS
3. APPROVAL REQUIRED ON ALL CAPITAL ITEMS PRIOR TO SUBMITTING REQUISITION
4. ENGINEERING REVIEW REQUIRED ON ALL ELECTRICAL MECHANICAL ITEMS AND INSTALLATION PRIOR TO SUBMITTING REQUISITION TO PURCHASING.

**REQUISITION NUMBER**

THIS ORDER NUMBER MUST APPEAR ON ALL PACKAGES, INVOICES AND SHIPPING PAPERS.

**P.O. NUMBER** 0013Q608

**SELECT ONE**

| ORDER | | RENT | |
| PRODUCT INFO | | BORROW | |
| RETURN | | | |

| P.O. DATE | DATE REQUIRED | TERMS | F.O.B | SHIP VIA | TAXABLE ☐ YES | THIS ORDER IS ☐ ORIG. ☐ CONFIR |
|---|---|---|---|---|---|---|
| REQUESTED DATE 4/22 | DATE REQUIRED | DEPT Surgery | PHONE EXTENSION 6124 | REQUESTED BY Sangita S. | ☐ CAPITAL ☐ BUDGET (CAR) | ☐ SPECIAL ☐ NON-BUDGETED ☐ SERVICE |

| QTY. ORDERED | QTY. RECEIVED | UNIT | CATALOG I.D. # | DESCRIPTION | UNIT PRICE | EXT'D PRICE | COST CENTER |
|---|---|---|---|---|---|---|---|
| | | ea | | Case on 4/22/11 | $ 245 | | |
| | | | | DR: Jenna Paige | | | |
| | | | | See attached | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| REQUESTING DEPT. HEAD/DATE | DIVISION CHIEF APPROVAL/DATE P. S. 4/22/11 | CFO APPROVAL/DATE | CEO APPROVAL/DATE 5/5/11 | | SALES TAX |
|---|---|---|---|---|---|
| ENGINEERING REVIEW REQUIRED ☐ NO ☐ YES | COMMENTS | | | | FRT/DEL. |
| | | | | | TOTAL |

**ADDITIONAL INFORMATION TO SELLER:**
1. Deliveries accepted only FROM 8:30 A.M. to 4:30 P.M. MONDAY thru FRIDAY.
2. Itemized Packing List must accompany ALL deliveries.
3. Any potential Back Orders must be communicated to Purchasing in advance of anticipated partial delivery schedules.
4. F.O.B. Unless routing is clearly defined on this order, SELLER assumes responsibility for lowest transportation cost whether it be via Parcel Post, UPS, Vendor Truck, Common Carrier/Air, etc.

**FORWARD INVOICES TO:**
**SILVER LAKE MEDICAL CENTER**
1711 WEST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90026
ATTN: MEDICAL CENTER ACCOUNTS PAYABLE

AUTHORIZED SIGNATURE

0000096 8/1/00          White - Accounting   Canary - Purchasing   Pink - Requestor

**CONFIDENTIAL**                                    **GW-00175**

# Exhibit 3



**FIRST AMENDMENT**

## TO COLLECTIONS AND MANAGEMENT SERVICES AGREEMENT

THIS FIRST AMENDMENT TO COLLECTIONS AND MANAGEMENT SERVICES AGREEMENT (this "Amendment") is entered into by and between Surgical Program Development, LLC, a California limited liability company, ("Company") and Success Healthcare 1, LLC, a California limited liability company dba Silver Lake Medical Center ("Hospital"). Any capitalized terms used herein but not defined herein shall have the meaning set forth in the Agreement, as defined below.

### RECITALS

A.     Company and Hospital have previously entered into that certain Collections and Management Services Agreement, effective June 1, 2010 (the "Agreement"), under which Company provides collection and other services to Hospital.

B.     Company and Hospital now desire to amend the Agreement as set forth below.

NOW, THEREFORE, for good and valuable consideration, the receipt of which is hereby acknowledged, the Company and Hospital hereby agree as follows:

1.     Sections 1.7 to 1.10 are added to the Agreement to read as follows:

"1.7    Physician Services. Notwithstanding Subsection 1.1 of this Agreement, Company will provide Collection Services for Hospital with respect to all Claims for inpatient services and related supplies arising from surgical procedures performed by the physicians listed on Attachment C, which is attached hereto and incorporated by reference herein. From time to time, Company and hospital may agree to amend Attachment C. Company shall be the exclusive provider of Collections Services with respect to all Claims for inpatient services and related supplies arising from surgical procedures performed by the physicians listed on Attachment C, as amended from time to time."

"1.8    Certain Management Services. Company will provide Hospital with certain management services relating to the Hospital's spine surgery program. Such services include, but are not limited to, maintaining good relationships between the Hospital and the physicians

ENTERED

1097859.2

Silver Lake
SLMMC — Surgical Program Dev (SPD) 1ST Amendment 103.13 Fin.00061 PDF

participating in the spine surgery program (the
"Physicians"); facilitating the resolution of any issues that
may arise between Hospital and any Physician: developing
relationships with qualified physicians to participate in the
spine surgery program with respect to patients not covered
by federal health care program such as Medicare or Medi-
Cal; facilitating the physician application process to
become a member of the Hospital's medical staff;
consulting and advising Hospital with regard to Payer
plans; arranging for the pre-qualification of patients and the
pre-authorization of surgeries; and providing other advice
and recommendations concerning the conduct of the
Hospital's spine surgery program.

"1.9      Federal Health Care Programs Excluded;
Prohibited Referrals.  Company has not recommended to
and arranged for, and shall not during the term of this
Agreement recommend to, or arrange for, any physicians to
furnish services covered under any federal health care
program at Hospital, including without limitation Medicare
or Medi-Cal, and the compensation set forth under this
Agreement is not intended as an inducement for, or in
return for, the referral of patients or recommending or
arranging for the provision of services covered by a federal
health care program at Hospital.  The term "Claims" as
used under this Agreement excludes any Claims
reimbursable under a federal health care program.
Company has not made and shall not make any referrals of
any patients to Hospital.

1.10      Claims Exclude Federal Health Care Programs.
The term Claims as used in this Agreement does not
include any claims that may be reimbursed in whole or in
part by a federal health care program, including without
limitation, Medicare or Medi-Cal, and Company has not
and  shall not perform any Collection Services with respect
to any such claims.

2.      Except as provided above, all other terms and conditions of the Agreement shall
remain in full force and effect.

IN WITNESS THEREOF, this Amendment is entered into.

Surgical Program Development Company,
LLC ("Company")

Brendan Bakir, Chief Executive Officer

Success Healthcare I, LLC, dba Silverlake
Medical Center ("Hospital")

Bret Cope, Chief Executive Officer

1007859.2                    3

## Attachement C

1- Albert Sompkins.
2- Justin Paquette
3- Roger Shortz
4- Kris Kulpin
5- John Regan
6- Jiri Konnechny
7- Jack Akmakjian
8- Babek Barcohana
9- Todd Moldawer
10- Darren Burgey
11- Brian Grossman
12- Jeremy Korman
13- Arthur Collins
14- Joseph Vanderlinden
15- Michael Edwards
16- Michael Bahk
17- Joseph Burns
18- Richard Ferkel
19- Wiliam Mouradian
20- Stephen Schopler

4

# Exhibit 4



**Brendan B <brendan@surgicalprogram.com>**

---

# Re: Correction, 7 cases booked since out meeting!
1 message

**Brian Dunn** <bdunn@promisehealthcare.com>                                   Mon, Oct 1, 2012 at 2:01 PM
To: "brendan@surgicalprogram.com" <brendan@surgicalprogram.com>
Cc: Brent Cope <bcope@silverlakemc.com>

Thank you.  We continue to enjoy and value our partnership.

Best wishes.

Brian E. Dunn
Success Healthcare
Promise Healthcare
(801) 676-3152 Office
(561) 869-6300 Florida Corporate Offices

CONFIDENTIALITY NOTICE:  This email communication and any attachments may contain confidential and privileged
information including but not limited to Protected Health Information (PHI) all of which is intended only for the use of the
designated recipients.  If you are not the intended recipient, or authorized to receive for the recipient, you are hereby
notified that you have received this communication in error and that any review, disclosure, dissemination or copying of it
or its contents is prohibited.  If you have received this communication in error, please destroy all copies of this
communication and any attachments and contact the sender by reply email.


On Oct 1, 2012, at 1:59 PM, "Brendan" <brendan@surgicalprogram.com> wrote:

> Just an FYI, since our meeting on the 10th there were booked for Pacquette, Shortz and Edwards.
>
> Thanks
>
> Brendan Bakir
> Brendan@SurgicalProgram.com
> Surgical Program Development
> 800 399-4399
> 310 748-8800 (Cell)
>
> 310 861-5001 (fax)

# Exhibit 5

## SECOND AMENDMENT

## TO COLLECTIONS AND MANAGEMENT SERVICES AGREEMENT

**THIS SECOND AMENDMENT TO COLLECTIONS AND MANAGEMENT SERVICES AGREEMENT** (the "Second Amendment") is entered into by and between Surgical Program Development, LLC, a California limited liability company, ("Company") and Success Healthcare 1, LLC, a California limited liability company dba Silver Lake Medical Center ("Hospital"). Any capitalized terms used herein but not defined herein shall have the meaning set forth in the Agreement as amended by the First Amendment To Collections and Management Services Agreement (the "First Amendment"), as defined below.

## R E C I T A L S

A.      Company and Hospital have previously entered into that certain Collections and Management Services Agreement, effective June 1, 2010 (the "Agreement"), which was subsequently amended pursuant to the First Amendment, under which Company provides collection and other services to Hospital.

B.      Company and Hospital now desire to amend the Agreement as set forth below in view of reductions to payments under California's worker's compensation program that became effective January 1, 2013.

**NOW, THEREFORE**, for good and valuable consideration, the receipt of which is hereby acknowledged, the Company and Hospital hereby agree as follows:

1.      Effective with respect to Claims arising from services to patients furnished on and after January 1, 2013, "fifty percent (50%)" in Section 3.3 of the Agreement is amended to be "forty percent (40%)."

2.      Company agrees that is shall not give notice to terminate the Agreement pursuant to Section 4.3 of the Agreement before January 1, 2014.

3.      Except as provided above, all other terms and conditions of the Agreement as amended by the First Amendment shall remain in full force and effect.

**IN WITNESS THEREOF**, this Amendment is entered into.

Surgical Program Development Company, LLC (**"Company"**)

_____

1138049.1


EXHIBIT

SPD2

Brendan Bakir, Chief Executive Officer

Success Healthcare I, LLC, dba Silverlake
Medical Center ("**Hospital**")

by _____

its _____

# Exhibit 6



**Brendan B <brendan@surgicalprogram.com>**

---

# Amendment
1 message

---

**Brian Dunn** <bdunn@promisehealthcare.com>            Thu, Jan 17, 2013 at 2:19 PM
To: "brendan@surgicalprogram.com" <brendan@surgicalprogram.com>
Cc: "Rosa Moore (RMoore@silverlakemc.com)" <RMoore@silverlakemc.com>, Brent Cope <BCope@silverlakemc.com>,
Steve Popkin <spopkin@promiseeastla.com>


I have communicated with Brent regarding the amendment as asked him to work through Rosa in completing it.  There
will be minor changes to your non-solicitation clause that should not be an issue.  However, the requested separate
"collections account" cannot be accommodated.  It will need to paid directly to you upon our receipt as it currently is
working.


With these changes, I will have Brent execute the amendment so we can move forward.  Again, the intent is to protect
your surgeons from solicitation.


Additionally, as discussed, I look forward to your proposal to change to current arrangement.  I am sure that we can reach
a mutually rewarding structure.


As always, so good to see you again.  Great evening of good food and scenery.  I look forward to discussing our different
ideas.


*Brian E. Dunn*

(801) 676 3152 Direct line

(561) 869 6300 Florida Corporate Offices







**SUCCESS AND PROMISE HEALTHCARE CONFIDENTIALITY NOTICE:**  This email communication and any attachments may contain
confidential and privileged information including but not limited to Protected Health Information (PHI) all of which is intended only for the
use of the designated recipients.  If you are not the intended recipient, or authorized to receive for the recipient, you are hereby notified that you
have received this communication in error and that any review, disclosure, dissemination or copying of it or its contents is prohibited.  If you
have received this communication in error, please destroy all copies of this communication and any attachments and contact the sender by reply
email.

# Exhibit 7

**EXHIBIT**

SPD 3

**Subject**: Re: Check Swap
**From**: Brendan B <brendan@surgicalprogram.com>
**To**: Brent Cope <BCope@silverlakemc.com>
**Cc**: "bdunn@successhealthcare.com" <bdunn@successhealthcare.com>, George Watkins <GWatkins@silverlakemc.com>
**Date Sent**: Friday, December 20, 2013 11:14:55 AM GMT-08:00
**Date Received**: Friday, December 20, 2013 11:14:55 AM GMT-08:00

Hello Brent.

Yes, I think that is a great idea. Our "experiment" the last few months proved that he cost of hardware is actually more than 10%, just a heads up for you, although it should balance out with all of the non-hardware cases. Actually, It is the main reason why we decided to accept the financing and guarantees on non-hardware cases. I will have Hooper Lundy amend the agreement back to the 50% of DRG.

Would you like to start that January 2014?

Regards

On Fri, Dec 20, 2013 at 11:01 AM, Brent Cope <BCope@silverlakemc.com> wrote:

Brendan,


We discussed revamping the structure of the agreement on Tuesday into one where your guarantees would be removed, putting the financial responsibility on SLMC for cases thus making lien type cases possible. As Success Healthcare emerges from its refinancing, I would propose that Success also begin paying for hardware directly. I would think that these types of changes would also warrant a discussion about rates paid by SLMC for SPD services. As SLMC takes responsibility for the hardware, SLMC would reduce the payment to SPD by 10 percentage points, which is what we agreed to as a result of the cost reimbursement changes in 2013 – this essentially puts us back to pre-2013 rates. Additionally, since SLMC would carry the risk of reimbursement, I propose that another 10 percentage points be taken off.


Will you be having your legal counsel modify the current agreement or should we handle that on our end?


Brent A. Cope, CEO

Silver Lake Medical Center

Office (213) 989-6123

Downtown Campus - 1711 W Temple, Los Angeles, CA 90026

Ingleside Campus - 7500 E Hellman, Rosemead, CA 91770

**CONFIDENTIALITY NOTICE**
This email communication and any attachments may contain confidential and privileged information including but not limited to Protected Health Information (PHI) all of which is intended only for the use of the designated recipients. If you are not the intended recipient, or authorized to receive for the recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please destroy all copies of this communication and any attachments and contact the sender by reply email.

SPD001072

# Exhibit 8

**Subject**: RE: Silver Lake contract with SPD
**From**: Brent Cope <BCope@silverlakemc.com>
**To**: Brendan B <brendan@surgicalprogram.com>
**Cc**: George Watkins <GWatkins@silverlakemc.com>, "Brian E. Dunn
(bdunn@successhealthcare.com)" <bdunn@successhealthcare.com>
**Date Sent**: Tuesday, January 7, 2014 5:51:05 PM GMT-08:00
**Date Received**: Tuesday, January 7, 2014 5:52:22 PM GMT-08:00

Changing the agreement back to a 50/50 with SLMC being responsible for hardware including cash flow is
acceptable to me. As long as SLMC can manage the vendors and the terms of payment – allowing us to
collect timely and float the vendors' payments. In the language Bookman prepares, we need to make sure
that SLMC has the right to approve cases prior to the case being scheduled based on hardware cost.

Also are we still talking about changing the liability arrangement?

Brent A. Cope, CEO
Silver Lake Medical Center
Office (213) 989-6123
*Downtown Campus - 1711 W Temple, Los Angeles, CA 90026*
*Ingleside Campus - 7500 E Hellman, Rosemead, CA 91770*
**CONFIDENTIALITY NOTICE**
This email communication and any attachments may contain confidential and privileged information including but not
limited to Protected Health Information (PHI) all of which is intended only for the use of the designated recipients. If you
are not the intended recipient, or authorized to receive for the recipient, you are hereby notified that you have received
this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is
prohibited. If you have received this communication in error, please destroy all copies of this communication and any
attachments and contact the sender by reply email.

**From:** Brendan B [mailto:brendan@surgicalprogram.com]
**Sent:** Tuesday, January 07, 2014 9:39 AM
**To:** Brent Cope
**Cc:** Dunn Brian
**Subject:** Silver Lake contract with SPD

Hello Brent

Per our conversation last week, I have requested that Lloyd Bookman writes another addendum beginning January 1, 2014
that would address the instrumented cases. Silver lake would bear all the cost for hardware, etc. and the management and
collections would revert back to 50%. I asked that the non instrumented cases remain the same for now, as that is the only
place where we are making a profit to offset the losses from 2013.

Originally, I had asked to pay 200% of cost for outpatient cases, however, it actually pencils out to about a 7% difference in
the hospitals favor to keep it as is.

I need you to please respond to this email today as there are 3 instrumented cases being done tomorrow, January 8 2014.

I hope your New Year is off to a great start!

Brendan

*Brendan Bakir, CEO*
*Surgical Program Development, llc*
*Brendan@SurgicalProgram.com*
*www.SurgicalProgram.com*
*(800) 399-4399*
*+1(310) 861-5001 (fax)*
*+1(310) 748-8800 (Mobile)*



EXHIBIT

SPD-4

# Exhibit 9

**Subject**: RE: Spine cases on 2/20/2014
**From**: George Watkins <GWatkins@silverlakemc.com>
**To**: Brendan B <brendan@surgicalprogram.com>
**Cc**: Sharon McCoy <SMcCoy@silverlakemc.com>, Brian Dunn
  <bdunn@promisehealthcare.com>
**Date Sent**: Friday, February 21, 2014 2:35:23 PM GMT-08:00
**Date Received**: Friday, February 21, 2014 2:37:38 PM GMT-08:00

Brendan
This is something we really need to look at, as we want the program to be profitable for all of us.  Let's set
up a meeting to discuss, how both of us can benefit the most from this relationship
Thank you
George

**From:** Brendan B [mailto:brendan@surgicalprogram.com]
**Sent:** Friday, February 21, 2014 2:30 PM
**To:** George Watkins
**Cc:** Sharon McCoy; Dunn Brian
**Subject:** Spine cases on 2/20/2014

Good Morning George

I am trying to address the hardware invoices for the cases done yesterday at SLMC, especially the Anterior / Posterior case.
As you know, administration decided that the hardware be paid for by the hospital, which is more than fine with me. I am
concerned that the hardware cost may exceed the 50% that the hospital would keep under the new terms set forth by admin.
I am concerned that the hospital will start losing money on every "hardware intensive" case. I can transfer these cases
elsewhere, but that should not be necessary.

You will find that I have negotiated lower prices for hardware than those that we contracted for when I was paying. I did so
to make sure that the hospital makes some profit. However, we need to structure this better moving forward.

The good news is that we will be expecting more than $93K for this case.

Best Regards

Brendan

--
Brendan Bakir, CEO
Surgical Program Development, llc
Brendan@SurgicalProgram.com
www.SurgicalProgram.com
(800) 399-4399
+1(310) 861-5001 (fax)
+1(310) 748-8800 (Mobile)

# Exhibit 10

**Subject**: New agreement between George and SPD
**From**: Brendan B <brendan@surgicalprogram.com>
**To**: George Watkins <GWatkins@silverlakemc.com>,Phil Calvano
<pcalvano@silverlakemc.com>
**Cc**: Brent Cope <bcope@silverlakemc.com>
**Date Sent**: Tuesday, April 8, 2014 10:29:47 AM GMT-07:00
**Date Received**: Tuesday, April 8, 2014 10:29:47 AM GMT-07:00

Hello Phil

It was nice running into you at the cafeteria, I wanted to clarify the deal that George and I
agreed to a couple of weeks ago. The new agreement is as follows. For instrumented cases only,
SPD will guarantee a gross per diem of $3,500 and have a management and collection fee of
50%. I.e., if after the 50% collection and management fee is deducted the hospital is left with a
hardware bill for $30000.00 and the hospital 50% is only $28,000 then SPD will pay the hospital
$3500 per diem gross meaning if the length of stay was 3 days, the hospital will get $3500 X 3
plus the $2000 shortfall from the payment for a total of $12,500.

Th hospital is responsible for all other items, meds. supplies, nerve monitoring, biologics, etc.
Biologics have been an issue in the past, so I suggest that Sharon and the new surgery director
chose a reasonable "shelf product" so that cost be contained.

Non instrumented cases and outpatient cases woudl remain at the 60/40 clip that they have been
at.

If you have any other questions, please feel free to contact George or myself.

Regards

Brendan
-
*Brendan Bakir, CEO*
*Surgical Program Development, llc*
*Brendan@SurgicalProgram.com*
*www.SurgicaProgram.com*
*(800) 399-4399*
*+1(310) 861-5001 (fax)*
*+1(310) 748-8800 (Mobile)*



SPD001397

# Exhibit 11

**Subject**: Re: Check Swap
**From**: Brendan B <brendan@surgicalprogram.com>
**To**: George Watkins <GWatkins@silverlakemc.com>
**Cc**: Dunn Brian <bdunn@promisehealthcare.com>, Josefa Atangan
<JAtangan@silverlakemc.com>, Phil Calvano <pcalvano@silverlakemc.com>, Sharon McCoy
<SMcCoy@silverlakemc.com>
**Date Sent**: Wednesday, August 13, 2014 11:05:55 AM GMT-07:00
**Date Received**: Wednesday, August 13, 2014 11:05:55 AM GMT-07:00

---

Hello George

Phil is reconciling the amounts owed. There is approximately $100,000 that I will send to Silver Lake before the end of the month, I do not have the exact amount yet. I think we were all waiting to see if there is a minimum per diem that we can use similar to what we did with Steve Popkin and George Koutsakos a couple of years back. It seems as if these numbers would not work post State Bill 863 becoming law in 2013. However, I am very optimistic as the newest spreadsheets show all of us being well in the black. These numbers are based on the current payments, i.e., 50% of DRG for spine case plus cost of hardware, and 40% for knee cases plus cost of hardware. George, please note that the knee cases are now close to break even for the hospitals; However, please note that once the air conditioning situation is addressed, and the related issues and readmits are eliminated, the profits for the hospital would hopefully double. In the last few months, with the challenges that we have had in the OR and on the floor, we have sustained some major losses. I can't say this without giving credit to what Sharon McCoy has done to address these issues, she has been very proactive. Much longer LOS days for Silver Lake not to mention at least 3 re-admits, and many less surgeries which affected all of us.
As to pain management cases, the fees are 40% of received payment as DRG is not a part of out patient reimbursement. Finally, because of the case law that we discussed regarding Personal Injury (PI) cases, a new class for billing purposes may be needed.

I hope that makes sense. I would like to address that with you again when Brian Dunn is in town in a week or two.

Warm Regards.

Brendan


On Wed, Aug 13, 2014 at 6:32 AM, George Watkins <GWatkins@silverlakemc.com> wrote:

> Please cut the check this morning
>
> Brendan
>
> Please send the other funds Phil has mentioned

---

**From:** brendan SPD [mailto:brendan@surgicalprogram.com]
**Sent:** Tuesday, August 12, 2014 2:47 PM
**To:** Fransiska Lonigro
**Cc:** George Watkins; Dunn Brian; Josefa Atangan
**Subject:** Re: Check Swap

SPD001667